**Andrija ARTUKOVIC, Petitioner,**

v.

**James J. BOYLE, United States Marshal, Respondent.**

**No. 13467.**

United States District Court
S. D. California, Central Division.

April 3, 1956.

O'Connor & O'Connor, Vincent G. Arnerich, Los Angeles, Cal., for petitioner.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for respondent U. S. Marshal.

Ronald Walker, Los Angeles, Cal., for Counsul General of Federal Peoples' Republic of Yugoslavia.

HALL, District Judge.

The holding of this court—107 F. Supp. 11—that no treaty was in existence between the United States of America and the country now known as Yugoslavia, was reversed by the United States Court of Appeals for the Ninth Circuit—Ivancevic v. Artukovic, 211 F.2d 565, certiorari denied 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645.

Article VI of the Treaty, May 17, 1902, 32 Stat. 1890, in its pertinent portion, provides as follows:

"A fugitive criminal shall not be surrendered *if the offense in respect of which his surrender is demanded be of a political character,* or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character."

■ The matter is before the court on a Petition for Writ of Habeas Corpus prior to any hearing by a Committing magistrate. The function of the court at this time on this hearing is not that of a Committing magistrate, Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948, and its power on a writ prior to such a hearing is confined to the limited and narrow question as to whether or not the Complaint states an extraditable offense under the treaty. Hence, this court cannot at this time consider that section of the treaty which provides that one shall not be surrendered "if he *proves* that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character." If the defendant can make such proof, the time and place to make it is at the hearing before the Committing magistrate. This court may now only consider whether or not the facts set forth on the face of the Complaint, together with the facts of which the court may take judicial notice, Jones v. United States, 1890, 137 U.S. 202, at page 214, 11 S.Ct. 80, 34 L.Ed. 691, make the offense in respect of which the surrender of petitioner is demanded one "of a political character."

■ The text of the Complaint differs from the Indictment, but it has attached to it a copy of the Indictment as it was filed in the demanding country. The text of the Indictment made in the demanding country controls over the text of the Complaint wherein there is any difference. And the whole Indictment must be read to determine whether or not within its four corners the conduct complained of was "of a political character."

■ The Indictment charges that the petitioner was "Minister of the Interior" from April 16, 1941, to October 10, 1942, in the cabinet of a government called "Pavelic" government. Many references are made to the fact that during the entire period involved in the Indictment, the petitioner occupied such position in such government. The court takes judicial notice of the fact that prior to, or at, or about, the time of the invasion of Yugoslavia by the German armies in early April, 1941, the head of the government of Yugoslavia, and all of the principal officials of that government, fled the country; and that on April 10, 1941, the portion of Yugoslavia known as "Croatia" established an independent government with a full set of officers, and sought recognition by

other governments (and secured recognition by some governments), in which the petitioner became an official and was Minister of the Interior of that government during all of the period of time covered by the Indictment.

It appears from the face of the Indictment that all of the asserted offenses for which extradition is sought were the result of "orders" issued by the petitioner, acting as such official of the above-mentioned government during the time of war.

The Indictment is in vehement language, and it and the briefs of the parties reflect the animus which has existed between the Croatians and the Serbs for many hundreds of years, as well as the deep religious cleavage known to exist among the peoples in the Balkans.

The Court has not counted the number of persons named, but notes that according to the parties, the Complaint names 1,293 persons as having been killed on "orders" of the petitioner.

But the Indictment does not stop at that. In Paragraph 7 on page 9, it is alleged that 30,000 unidentified persons were killed on "orders" of the petitioner. And further, in Paragraph 7 on page 14, approximately 3,000 more unidentified persons are alleged to have been killed on "orders" of the petitioner. In Paragraph 8 on page 15, it is alleged that as a result of "orders" of the petitioner, 200,000 persons were killed. On page 17, it is alleged that a total of 17,600 unidentified children were killed on "orders" of the petitioner.

It would be a work of supererogation to analyze the Indictment further. Though the Indictment is not bad because it charges the death of more than one person, the plain reading of the Indictment here makes it immediately apparent that the offenses for which the surrender of the petitioner is sought, were offenses of a political character. In re Ezeta, D.C., 62 F. 972, and cases there cited. See, also, Hackworth—Digest of International Law, Vol. IV, 1952 Ed., page 45 et seq., Section 316, and cases there collected, which show that officials of the United States, Mexico and many other countries on similar accusations, have uniformly held that conduct, such as that with which petitioner is charged in the Indictment here, was conduct of a political character and not extraditable under a treaty in terms such as the one before the court.

The petitioner is clearly entitled to the Writ of Habeas Corpus, and it is hereby ordered that such Writ of Habeas Corpus issue, and that thereupon petitioner be discharged and his bail exonerated.