LEHMANN, OFFICER IN CHARGE, IMMIGRA-
TION AND NATURALIZATION SERVICE, *v.*
UNITED STATES EX REL. CARSON OR
CARASANITI.

No. 72.   Argued March 26–27, 1957.—Decided June 3, 1957.

*Roger D. Fisher* argued the cause for petitioner. With him on a brief was *Solicitor General Rankin.* With *Mr. Rankin* on a brief were *Assistant Attorney General Olney, Beatrice Rosenberg* and *J. F. Bishop.*

*David Carliner* argued the cause for respondent. With him on the brief were *Henry C. Lavine* and *Jack Wasserman.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Respondent, a native and citizen of Italy, entered the United States in 1919 as a stowaway. No action was taken to deport him "within five years after entry" as then limited by § 19 of the Immigration Act of February 5, 1917, 39 Stat. 889.

On January 15, 1936, respondent was convicted in Ohio of the crime of blackmail, and he was sentenced to imprisonment. On April 25, 1936, he was again convicted in Ohio of another crime of blackmail and sentenced to imprisonment. The second sentence was to begin at the expiration of the first. He was released from prison on February 1, 1941. A proceeding to deport him, under the provisions of § 19 of the Act of February 5, 1917, based upon his convictions of these two independent crimes, was commenced, but before final determination of that proceeding, the Governor of Ohio, on July 30, 1945, granted petitioner a conditional pardon [1] for the second conviction. Because of that conditional pardon and of the provision in § 19 of the 1917 Act that "the deportation of aliens convicted of a crime involving moral turpi-

---

[1] The pardon was "conditioned upon good behavior and conduct and provided that he demeans himself as a law abiding person and is not convicted of any other crime, otherwise this Pardon to become null and void."

tude shall not apply to one who has been pardoned," that deportation proceeding was withdrawn on October 9, 1945.

In 1952 Congress enacted the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U. S. C. § 1101 *et seq.*, by which it repealed [2] the Immigration Act of February 5, 1917, and, in many respects, substantially changed the law. The present proceeding was brought under the 1952 Act to deport respondent upon two grounds: first, under § 241 (a)(1), as an alien who, at the time of entry, was excludable by the law existing at the time of entry (*i. e.*, a stowaway under § 3 of the Immigration Act of February 5, 1917, 39 Stat. 875), and, second, under § 241 (a)(4), as an alien who had been convicted of two crimes involving moral turpitude for neither of which had he been granted "a full and unconditional pardon." After a hearing, respondent was ordered deported by a special inquiry officer. That order was affirmed by the Board of Immigration Appeals.

Respondent then filed a petition for a writ of habeas corpus in the District Court for the Northern District of Ohio, contending that, because of the five-year limitation contained in the former Act (§ 19 of the Immigration Act of February 5, 1917), he could not lawfully be deported as a stowaway after the lapse of five years from the date he entered this country, and that he could not lawfully be deported for having been convicted of the two crimes of blackmail, because he had been conditionally pardoned for one of them. The District Court denied the petition. The Court of Appeals reversed, 228 F. 2d 142, holding that respondent had acquired a "status of nondeportability," under the prior law, which was protected to him by the savings clause in § 405 (a) of the 1952 Act, 66 Stat. 280, 8 U. S. C. § 1101, Note, "unless otherwise

---

[2] § 403 (a)(13), 66 Stat. 279.

specifically provided" in that Act, which it held had not been done. We granted certiorari. 352 U. S. 915.

Section 405 (a) of the 1952 Act, upon which the Court ᵥ of Appeals relied, provides in pertinent part as follows:

> "(a) Nothing contained in this Act, *unless otherwise specifically provided therein,* shall be construed . . . to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes,[3] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. . . ." (Emphasis supplied.)

By its express terms, § 405 (a) does not apply if it is "otherwise specifically provided" in the Act. As respects the grounds of deportation involved here, we think the Act does otherwise specifically provide in § 241, 66 Stat. 204, 8 U. S. C. § 1251. That section, so far as here pertinent, provides:

> "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
>
> "(1) *at the time of entry* was within one or more of the classes of aliens excludable by the law existing at the time of such entry;
>
> .        .        .        .        .
>
> "(4) . . . *at any time after entry* is convicted of two crimes involving moral turpitude, not arising out

---

[3] It appears to be obvious that this was a typographical error and that the word should be read as "statuses."

of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial;

. . . . .

"(b) The provisions of subsection (a)(4) respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several states . . . .

. . . . .

"(d) Except as otherwise specifically provided in this section, *the provisions of this section shall be applicable* to all aliens belonging to any of the classes enumerated in subsection (a), *notwithstanding (1) that any such alien entered the United States prior to the date of enactment of this Act, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act."* (Emphasis supplied.)

Thus, even if we assume that respondent has a "status" within the meaning of § 405 (a), that section by its own terms does not apply to situations "otherwise specifically provided" for in the Act. Section 241 (a)(1) specifically provides for the deportation of an alien who "at the time of entry was . . . excludable by the law existing at [that] time," and § 241 (a)(4) specifically provides for the deportation of an alien who "at any time after entry" has been convicted of two crimes involving moral turpitude. And § 241 (d) makes §§ 241 (a)(1) and 241 (a)(4) applicable to all aliens covered thereby, "notwithstanding (1) that any such alien entered the United States prior to the date of enactment of this Act, or (2) that

the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act." It seems to us indisputable, therefore, that Congress was legislating retrospectively, as it may do,[4] to cover offenses of the kind here involved. This case is, therefore, "otherwise specifically provided" for within the meaning of § 405 (a). The Court of Appeals was in error in holding to the contrary, and its judgment is

*Reversed.*

Opinion of MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs.[*]

I agree with the Court that § 241 of the Immigration and Nationality Act of 1952, 8 U. S. C. § 1251, makes aliens deportable for past offenses which when committed were not grounds for deportation. The Court goes on to hold, however, that such retrospective legislation is a valid exercise of congressional power, despite Art. I, § 9, of the Constitution providing that "No Bill of Attainder or ex post facto Law shall be passed." Past decisions cited by the Court support this holding on the premise that the ex post facto clause only forbids "penal legislation which imposes or increases criminal punishment for conduct lawful previous to its enactment." *Harisiades* v. *Shaughnessy,* 342 U. S. 580, 594. I think this definition confines the clause too narrowly. As MR. JUSTICE DOUGLAS pointed out in his dissenting opinion in *Marcello* v. *Bonds,* 349

[4] *Bugajewitz* v. *Adams,* 228 U. S. 585; *Ng Fung Ho* v. *White,* 259 U. S. 276; *Mahler* v. *Eby,* 264 U. S. 32; *United States ex rel. Eichenlaub* v. *Shaughnessy,* 338 U. S. 521; *Harisiades* v. *Shaughnessy,* 342 U. S. 580; *Galvan* v. *Press,* 347 U. S. 522; *Marcello* v. *Bonds,* 349 U. S. 302.

[*][NOTE: This opinion applies also to No. 435, *Mulcahey, District Director, Immigration and Naturalization Service,* v. *Catalanotte, post,* p. 692.]

U. S. 302, 319, another line of decisions by this Court has refused to limit the protections of the clause to criminal cases and criminal punishments as those terms were defined in earlier times. *Fletcher* v. *Peck,* 6 Cranch 87, 138, 139; *Cummings* v. *Missouri,* 4 Wall. 277; *Ex parte Garland,* 4 Wall. 333. And see *United States* v. *Lovett,* 328 U. S. 303, 315, 316.

What is being done to these respondents seems to me to be the precise evil the ex post facto clause was designed to prevent. Both respondents are ordered deported for offenses they committed long ago—one in 1925 and the other in 1936. Long before the 1952 Act reached back to add deportation as one of the legal consequences of their offenses both paid the price society then exacted for their misconduct. They have lived in the United States for almost 40 years. To banish them from home, family, and adopted country is punishment of the most drastic kind whether done at the time when they were convicted or later. I think that this Court should reconsider the application of the ex post facto clause with a view to applying it in a way that more effectively protects individuals from new or additional burdens, penalties, or punishments retrospectively imposed by Congress.