**UNITED STATES of America, ex rel. George PIPERKOFF, Relator,**

v.

**John L. MURFF, District Director, Immigration and Naturalization Service, District of New York, United States Department of Justice, Respondent.**

United States District Court
S. D. New York.

July 30, 1958.

Jacob W. Rozinsky, New York City, for relator.

Arthur H. Christy, U. S. Atty., New York City, for respondent, Roy Babitt, General Atty. of the Immigration and Naturalization Service of the U. S. Dept. of Justice, New York City (also Special Asst. U. S. Atty.), of counsel.

LEVET, District Judge.

This is an application to stay the deportation of the relator, George Piperkoff. An order has been made to deport him from the United States upon the ground that subsequent to his entry into the United States in 1921 he was convicted of two crimes involving moral turpitude.

The statute involved is Section 241(b)(2) of the Immigration and Nationality Act, 66 Stat. 208 [8 U.S.C.A. § 1251(b)(2)], which reads:

"The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply * * * if the court sentencing such alien for such crime shall make, at the time of *first imposing judgment or passing sentence,* or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter." (Emphasis added)

The predecessor of this section was originally contained in Section 19 of the 1917 Act (Ch. 29) and as amended became Section 155(a) of Title 8 U.S.C.A. The pertinent portion relating to the recommendation by the court was as follows:

" * * * Provided further, That the provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, *at the time of imposing judgment or passing sentence or within thirty days thereafter,* due notice having first been given to representatives of the State, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this Act; nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment * * *" The Statutes at Large of the United States of America, 64th Congress, 1915–1917, Vol. 39, Part 1, pp. 889–890. (Italics added.)

Section 241(a)(4) of the Immigration and Nationality Act, 66 Stat. 204 [8 U.S.C.A. § 1251(a)(4)] is as follows:

"Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General be deported who—* * * is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial; * * *"

The facts are not in dispute:

(1) The relator was indicted on June 25, 1935, for burglary in the third degree and attempted grand larceny in the first degree. (See indictment No. 8332, Queens County, State of New York) Upon a confession and plea of guilty, the relator was sentenced on October 15, 1935 to a term of one year. No recommendation against deportation was made.

(2) On June 27, 1938, the relator was indicted for robbery in the first degree, grand larceny and assault by reason of acts occurring on June 20, 1938. (See indictment No. 20381, Queens County, State of New York) On November 15, 1938, the relator was held guilty of robbery, sentenced to a minimum of 40 years and a maximum of 60 years. No recommendation or notice apparently was given.

(3) On December 5, 1939, by reason of the aforesaid convictions for a crime involving moral turpitude and his having received a sentence of a year or more in each case, a warrant of deportation was issued effective upon his release from prison.

(4) On August 4, 1954, relator moved by coram nobis to vacate the 1935 con-

viction predicated upon lack of representation by counsel; this was granted. Then relator plead guilty to unlawful entry, a misdemeanor, and sentence was suspended, but no recommendation against deportation was made.

(5) On August 4, 1954, it was adjudged that the relator's second conviction in 1938 could not be a second felony offense under the state laws. A new sentence was imposed, indeterminate, up to 20 years, with a minimum of 10 years, with certain credits for time served, etc. On this sentence the court recommended that the relator not be deported. No notice thereof, as required, however, was given.

(6) Relator then sought reopening of the deportation proceeding for the submission of new evidence. On September 1, 1955, an order was entered providing for relator's deportation from the United States upon the ground that relator, while not subject to deportation under the Immigration Act of 1917, was, nevertheless, subject to deportation under Section 241(a) (4) of the Immigration and Nationality Act [8 U.S.C.A. § 1251(a) (4)] upon the ground that subsequent to entry he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct: to wit, unlawful entry and robbery in the first degree. The recommendation against deportation of August 4, 1954 was held to be a nullity in that it was made without compliance with the statute, to wit, Section 241(b) of the Immigration and Nationality Act [8 U.S.C.A. § 1251(b)] and, more particularly, that it was made by the court without notice to the interested parties, as required by the statute. It may be noted here that under the federal act (Section 1251(a) (4)) it is not necessary for deportation that the two convictions be felonies.

(7) After dismissal by the Board of Immigration Appeals of relator's appeal from this order of the Special Inquiry Officer (see (6) above) a warrant of deportation was issued on January 4, 1956.

Various applications for administrative relief were subsequently denied.

(8) Once again the relator, then on parole, resorted to coram nobis, and on June 27, 1957 an order of the County Court, County of Kings, was made providing that the judgments entered on August 4, 1954 be vacated and setting August 2, 1957 for resentence. In the resentence the same punishment was provided as on August 4, 1954, the only difference being a recommendation against deportation and a direction for notice.

(9) On April 28, 1958 the relator moved in the Board of Immigration Appeals for termination of the proceeding. This motion was denied upon the ground that the recommendation against deportation was ineffectual.

The only issue urged by the relator now is that the Immigration and Naturalization Service is acting arbitrarily in refusing to accept the recommendation of the County Court made on August 2, 1957.

The respondent contends:

(1) That the action of the court in 1957 was not made at the time of first sentencing as required by the Act;

(2) That the 1957 writ of coram nobis was ultra vires and improper.

■ The relator obtained no right to avoid deportation (1) by reason of the 1938 sentence because no recommendation was made; (2) by reason of the 1954 sentences because, although a recommendation was made, no notice was given.

The order of August 2, 1957, based upon coram nobis, was in effect, if not in form, a nunc pro tunc order making a recommendation against deportation to permit notice thereof in order to simulate compliance with the statute.

Even under the Act of 1917 it was held that a nunc pro tunc order making recommendation against deportation, entered more than a year after a second conviction, was insufficient. United

States ex rel. Klonis v. Davis, 2 Cir., 1926, 13 F.2d 630. In that case Judge Hand wrote as follows:

"The language of the section avoids deportation if the alien 'has been pardoned,' or 'if the court, or judge thereof, sentencing such alien, * * * shall, at the time of imposing * * * sentence or within thirty days thereafter' make a recommendation to that effect. We do not see how we can interpolate as a condition that the recommendation may be made within 30 days after the effect of the sentence is realized. Apparently during its course through the House an amendment was offered and rejected which extended the judge's power indefinitely. United States ex rel. Arcara v. Flynn, D.C., 11 F.2d 899. Even without that, we should have felt bound to read the words as they are written. Possibly it was thought that those who for any reason failed to get a timely recommendation would be protected by a pardon, but at any rate the power of the court was exactly circumscribed, and we may not enlarge it." At page 630.

See also United States v. Esposito, D.C.E.D.N.Y.1946, 67 F.Supp. 770.

■ Section 1251(b) (2) of Title 8 U.S.C.A. applies retroactively (Lehmann v. United States ex rel. Carson, 1957, 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122, rehearing denied 354 U.S. 944, 77 S. Ct. 1421, 1 L.Ed.2d 1542; Mulcahey v. Catalanotte, 1957, 353 U.S. 692, 77 S. Ct. 1025, 1 L.Ed.2d 1127, rehearing denied 354 U.S. 943, 77 S.Ct. 1391, 1 L. Ed.2d 1541), notwithstanding that the facts occurred prior to the date of enactment of the Act.

■ The present statute is more stringent than the 1917 Act since it requires the recommendation to be made "at the time of first imposing judgment or passing sentence." Title 8 U.S.C.A. § 1251(b). It is, I believe, apparent that this requirement was not observed. The sentence of August 2, 1957 was not when "first imposing judgment or passing sentence." The word "first" must be given its normal meaning. It cannot be disregarded.

■ We are not concerned here as to the validity of the proceedings in coram nobis insofar as state action as to sentence imposed by the state may be effected. However, it is clear that the federal government in its own sphere has an inherent right to determine the basis on which an alien who has been lawfully convicted of a crime or crimes involving moral turpitude may comply with conditions necessary to avoid deportation. United States ex rel. Zapp v. District Director of Immigration & Naturalization, 2 Cir., 1941, 120 F.2d 762, 764. In that case Judge Clark, now Chief Judge, stated:

"* * * It is well established that the expulsion of aliens is a sovereign power necessary to the safety of the country, to be regulated by the legislative department by such statutes as it deems wise policy to require. Mahler v. Eby, 264 U.S. 32, 39, 44 S.Ct. 283, 68 L. Ed. 549; Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905. * . * *" At page 764.

It is clear, therefore, that on September 1, 1955, the Special Inquiry Officer correctly held relator deportable as an alien convicted of the commission of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The Board of Immigration Appeals likewise properly affirmed deportability on January 4, 1956. Relator's motion for reconsideration due to the proceedings in the County Court, County of Kings, on August 2, 1957 was properly denied by the Board of Immigration Appeals on April 28, 1958.

Accordingly, the writ of habeas corpus heretofore issued is dismissed and relator is remanded to the custody of the respondent.

So ordered.