**Petition for Naturalization of Florin Constantin ZAHARIA.**

United States District Court
S. D. New York.
Sept. 19, 1958.

Sebastian Frisof, New York City, for petitioner.

Howard I. Cohen, New York City, U. S. Naturalization Examiner.

BICKS, District Judge.

The sole question in this contested naturalization proceeding is whether the petitioner has satisfied the statutory residential prerequisites to citizenship. The material facts are not in dispute.

Petitioner, a native of Roumania, entered the United States on April 4, 1948 as a visitor for business. He overstayed his period of admission because, as a political refugee, he could not return to his homeland. Petitioner then applied for an adjustment of status to that of a permanent resident. He took all steps prescribed by Section 4 of the Displaced Persons Act of 1948, set out in the margin,[1] so that on May 17, 1954,

---

1. "Any alien who (1) entered the United States prior to April 30, 1949, and was on that date in the United States, or if he was temporarily absent from the United States on that date for reasons which, in accordance with regulations to be promulgated by the Attorney General, show special circumstances justifying such absence, and (2) is otherwise admissible under the immigration laws, and (3) is a displaced person residing in the United States as defined in this section may, within two years next following the effective date of this Act, as amended, * * * apply to the Attorney General for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts

a Concurrent Resolution of Congress was adopted favoring the grant to him of the status of permanent resident.[2] Consistent with the statute the Attorney General of the United States then recorded petitioner's admission for permanent residence as of the date of his last entry into the United States, viz.: April 4, 1948. From the date of his entry until September 11, 1954, petitioner continuously resided and was physically present in the United States. While here petitioner was employed in the New York City office of the Roumanian Section of Radio Free Europe, a division of the Free Europe Committee. On September 11, 1954, petitioner was transferred to the office of his employer in Munich, Germany. His position was that of Senior Announcer in the Roumanian Section. Except for a trip to the United States between July 16, 1956, and July 29, 1956, petitioner's employment required him to and he did remain in Europe until June 15, 1958 when he returned to this country. On June 27, 1958 he filed a Petition for Naturalization with the Clerk of this Court.

Granting of the petition is resisted by the Immigration and Naturalization Service on the ground that petitioner, during the 5 year period immediately preceding the date of the filing of the petition, June 27, 1958, was not physically present in the United States for at least thirty (30) months as required by section 316(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1427(a). Said section, insofar as here material, provides:

> "(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time * * *"

The 1952 Act in addition to continuing the five year residence prerequisite to naturalization which had been in the nationality laws since the early days of the Republic[3] added the further requirement that applicants for naturalization must be physically present within the United States for at least one-half of

---

and circumstances of the case, determine that such alien has been of good moral character for the preceding five years and that such alien is qualified under the provisions of this section, the Attorney General shall report to the Congress all of the pertinent facts in the case. If during the session of the Congress at which a case is reported, or prior to the end of the session of the Congress next following the session at which a case is reported, the Congress passes a concurrent resolution stating in substance that it favors the granting of the status of permanent residence to such alien the Attorney General is authorized, upon receipt of a fee of $18, * * * *to record the admission of the alien for permanent residence as of the date of the alien's last entry into the United States.* If prior to the end of the session of the Congress next following the session at which a case is reported, the Congress does not pass such resolution, the Attorney General shall thereupon deport such alien in the manner provided by law; * * * *" [Emphasis supplied]. 50 U.S.C.A.Appendix, § 1953(a) (Supp.1957).

2. H.R.Con.Res. 197, 83rd Cong.2d Sess., set forth in 68 Stat. B38, B47 (1954), reads:
   "*Resolved by the House of Representatives (the Senate concurring),* That the Congress favors the granting of the status of permanent residence in the case of each alien hereinafter named in which case the Attorney General has determined that such alien is qualified under the provisions of section 4 of the Displaced Persons Act of 1948, as amended (62 Stat. 1011; 64 Stat. 219; 50 App.U.S.C.1953);
   *       *       *       *       *
   "A-6904363, Zaharia, Florin Constantin * * *"

3. See S.Rep. No. 1137, 82d Cong., 2d Sess. 41 (1952); H.R.Rep. No. 1365, 82d Cong., 2d Sess. 78 (1952).

the five year period of continuous residence.[4] The Government acknowledges that petitioner has met the five-year continuous residence requirement, but points out that petitioner has not established the requisite thirty months physical presence within that five year period. Absent the savings clause, section 405, of the 1952 Act, the petition would have to be denied. We inquire, therefore, whether the "savings clause" applies and if it does whether petitioner would be eligible for naturalization under the prior Act.

Recognizing that the 1952 Act effected a complete revision of the immigration and nationality laws, and desirous of avoiding adverse effects upon pre-existing conditions, statuses and rights not fully matured, Congress included a "savings clause" of unprecedented breadth, § 405(a), 8 U.S.C.A. § 1101 note, as follows:

"Nothing contained in this Act, unless otherwise specifically provided herein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant or arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, [sic][5] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *"

This savings clause has been broadly construed. See e. g., United States v. Menasche, 1955, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615; Wong Kay Suey v. Brownell, 1955, 97 U.S.App.D.C. 26, 227 F.2d 41, certiorari denied 1956, 350 U.S. 969, 76 S.Ct. 439, 100 L.Ed. 841; Aure v. United States, 9 Cir., 1955, 225 F.2d 88; United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 1955, 221 F.2d 578; In re Carnavas, D.C.S.D. N.Y.1957, 155 F.Supp. 12.

The Government urges that petitioner has not established any "status", "condition" or "right in process of acquisition" within the meaning of § 405(a) and would limit the Menasche holding to the facts in that case. There though the petitioner filed a declaration of intention to become an American citizen before the effective date of the 1952 Act, his petition for naturalization was filed after that date. The Government overlooks that the Supreme Court in the Menasche case expressly stated "that Congress intended to adopt the principle of the Bertoldi case that 'the new act should take effect prospectively'" and further that "the congressional resolution of the Bertoldi-Aberasturi conflict[6]

---

4. See however 8 U.S.C.A. § 1427(c) which provides that "persons who are employed by, or under contract with, the Government of United States" may be relieved from the physical presence requirement. The President's Commission on Immigration and Naturalization felt that this physical presence requirement was unduly restrictive and recommended that it "be eliminated in the cases of aliens necessarily absent from the United States in the employment of an American research or business organization." See "Whom We Shall Welcome", p. 247 (1953).

5. This is an obvious typographical error and the word should be read as "statuses". Lehmann v. United States ex rel. Carson, 1957, 353 U.S. 685, 688 note 3, 77 S.Ct. 1022, 1 L.Ed.2d 1122.

6. In United States ex rel. Aberasturi v. Cain, 2 Cir., 1945, 147 F.2d 449, 452, a majority of the Court held that the savings clause of the 1940 Act did not preserve "a mere condition, unattended

indicates a willingness, at least in some situations, to preserve rights in process of acquisition without requiring affirmative action on the part of the alien." 348 U.S. at pages 534, 536, 75 S.Ct. at page 517. See also Aure v. United States, supra; United States ex rel. Zacharias v. Shaughnessy, supra. Moreover, the Court indicated that Menasche's residence in and of itself would have been sufficient to give rise to his rights under § 405(a) and that its decision "could be rested on this ground." 348 U.S. at page 536, 75 S.Ct. at page 518. The Government argues that this statement is mere dictum and "not binding upon this Court", that in "numerous decisions" (none of which is cited in its brief) "the Courts have avoided reference to the dicta [sic] and thus by implication have rejected same." The Court of Appeals for the Ninth Circuit in Aure v. United States, supra, 225 F.2d at page 90, after quoting the foregoing from Menasche, stated "This is dictum of compelling force". It has been uniformly followed. See, e. g., In re Pinner's Petition, D.C.N.D.Cal.1958, 161 F.Supp. 337; Petition of Kaufteil, D.C.S.D.N.Y.1957, 152 F.Supp. 538; Petition of Pauschert, D.C.S.D.N.Y.1956, 140 F.Supp. 485; Petitions of F–G– and E–E–G–, D.C.S.D.N.Y.1956, 137 F.Supp. 782.

■ The Government urges that the Concurrent Resolution of Congress (under which petitioner was granted permanent residence) is not here material since it was passed long after the effective date of the Immigration and Nationality Act of 1952. So narrow a view is at variance with the plain language of Section 4 of the Displaced Persons Act, pursuant to which said Resolu-

tion was adopted.[7] An alien, whose status is adjusted in accordance with the provisions of this statute, as contrasted with other laws providing for adustment of status,[8] is granted permanent residence "as of the date of [his] last entry into the United States." Petitioner's status as a permanent resident was thus adjusted retroactively as of April 4, 1948 and, in accordance with the mandate of Congress, he must be regarded as such for all purposes,[9] including the immigration and nationality laws.

■ Petitioner, his status having been duly adjusted to that of a permanent resident as of April 4, 1948, by his continuous residence and physical presence in the United States for more than fifty-six months prior to the effective date of the 1952 Act, achieved a "status" or "condition" within the meaning of § 405(a), the "savings clause", and was in the process of acquiring a right to be naturalized under the then controlling Act. Congress did not intend "to strip aliens of advantages gained under prior laws" but rather to preserve "rights accruing in the prepetition stages of the naturalization process." United States v. Menasche, supra, 348 U.S. at pages 535, 538, 75 S. Ct. at pages 518, 519, 99 L.Ed. 615. See also Petition of Pringle, D.C.E.D. Va.1953, 122 F.Supp. 90, 92, affirmed per curiam United States v. Pringle, 4 Cir., 1954, 212 F.2d 878. Petitioner's inchoate right to be naturalized in accordance with the provisions of the National Act of 1940 was protected and preserved by the "savings clause" in the 1952 Act. Section 316(a) thereof, which imposes the requirement of physical presence, absent in the former Act,

---

by any affirmative action", while in Bertoldi v. McGrath, 1949, 86 U.S.App. D.C. 1, 178 F.2d 977, a contrary conclusion was reached.

7. See notes 1, 2 supra.

8. See, e. g., section 6 of the Refugee Relief Act of 1953, 50 U.S.C.A.Appendix, § 1971d (Supp.1957). ("as of the date of the passage of such concurrent resolu-

tion"); Pub.L. No. 85–700, 85th Cong. 2d Sess. § 245(b) (Aug. 21, 1958) 8 U.S. C.A. § 1255(b) ("as of the date the order of the Attorney General approving the application for the adjustment of status is made").

9. Cf. United States v. Manufacturer Cas. Ins. Co., D.C.S.D.N.Y.1953, 113 F.Supp. 402.

does not specifically provide otherwise and, therefore, does not take this case out of the ambit of the "savings clause". United States v. Menasche, supra, 348 U.S. at page 539, 75 S.Ct. at page 520.

The 1940 Act, 54 Stat. 1142, 8 U.S.C. § 707(a) (1946 ed.), made no provision for any period of physical presence as a condition to naturalization but did require at least 5 years continuous residence immediately preceding the filing of the petition. The Government's brief concedes that under all the circumstances in this case petitioner has complied with this requirement.

Accordingly, the petition for naturalization is granted.