MATTER OF L——

In DEPORTATION Proceedings

A-4019591

*Decided by Board June 12, 1959*

Recommendation against deportation—Reopened trial and new sentence ineffectual to defeat deportation.

Court's opportunity to make binding recommendation against deportation at the time of alien's conviction and sentence in 1940 cannot be extended or revived five years later by order granting new trial and imposition of new sentence. The rule that the court has only one opportunity to make a valid recommendation against deportation applies equally to section 19(a) of the Immigration Act of 1917 and section 241(b) of the Immigration and Nationality Act.

CHARGE:

Order:  Act of 1952—Section 241(a)(4)—Convicted of 2 crimes involving moral turpitude after entry.

## BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special inquiry officer finding respondent deportable on the charge stated above and denying his application for discretionary relief.

Respondent, a 60-year-old married male, a native and national of Italy, has been a resident of the United States since 1914 when he was admitted for permanent residence. His deportation is sought on the ground that he has been convicted of two crimes involving moral turpitude. The issues are whether he has been "convicted" as required by the immigration laws and whether a valid recommendation against deportation exists.

In 1932, respondent was convicted for interfering with, and feloniously assaulting with deadly weapons, United States officers. There is no issue as to this crime.

In 1940, respondent was convicted in the Circuit Court at Pontiac, Michigan, for breaking and entering in the nighttime with intent to commit larceny in violation of section 110, Act 328, Public Acts of 1931 [section 28.305, vol. 24, Michigan Statutes Annotated (1938)]. On March 26, 1940, the court ordered the respondent to be confined for a term of 5 to 15 years. Respondent served 5 years

389

and was released so that he could be deported. At that time, motion was made to have the sentence for the breaking and entering revoked on the ground that the failure of the court to make a recommendation against deportation at the time of sentencing the alien might result in his deportation. On October 31, 1945, the court ordered that a new trial be had and that the previous sentence be revoked because the sentence as it stood might provide for greater punishment than was intended by the court. On December 26, 1945, the new trial was held; the respondent entered a plea of guilty; the court ordered that the respondent "be released on probation under the provisions of the statute in such case made and provided, for a period of five years from and including this date, in charge" of the probation officer of the court. On January 2, 1951, the court discharged respondent from probationary supervision and "judgment of suspended sentence" was entered.

Counsel argues that respondent is not deportable because the action of the court in revoking the sentence and imposing probation was substantially a recommendation against deportation and prevents the use of this conviction for deportation purposes.

When the recommendation against deportation was made in 1945, section 19 of the Immigration Act of 1917 [8 U.S.C. 155(a)] controlled. It provided that deportation of an alien for conviction of a crime should not take place if the alien "has been pardoned * * * or * * * if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported * * *." The courts interpreted this provision to defeat any attempt to extend the power of the court to make the recommendation indefinitely. This was so, even though at the time of sentencing the court had not been aware that the conviction made the alien deportable. Thus, a recommendation against deportation made *nunc pro tunc* after the expiration of 30 days from the time sentence was imposed was held ineffectual, as was a recommendation made after an alien had been placed on probation during the period within which the court could have entered a sentence to imprisonment, but after the expiration of 30 days from the time probation had been granted (*United States ex rel. Klonis* v. *Davis*, 13 F.2d 630 (C.C.A. 2, 1926); *Ex parte Eng*, 77 F. Supp. 74 (N.D. Calif., 1939); *United States ex rel. Arcara* v. *Flynn*, 11 F.2d 899 (W.D. N.Y., 1926)).

In the instant case, the revoked order was not void nor irregular. It had been entered in compliance with the law. Under it the alien had been imprisoned. He could not attack the legality of his detention nor the legality of the order. Since the order was not invalid

upon its face, and since the court once had the opportunity to make a binding recommendation against deportation, to now give effect to the recommendation made so many years after the proper time would be to give the court power to make recommendation indefinitely. This, Congress did not desire. Congressional history discussed in the court cases establishes this fact. On this score, it should also be noted that Congress provided for a procedure which eliminated liability to deportation even after the court had lost the power to make a valid recommendation. Congress provided that a pardon would defeat deportation. After the court had lost its opportunity, it became a matter for the pardoning power. In *United States ex rel. Piperkoff* v. *Murff*, 164 F. Supp. 528 (S.D.N.Y., 1958), the court stated that the present act [section 241(b), Immigration and Nationality Act; 8 U.S.C. 1251(b)] is more stringent because it requires that the recommendation against deportation be made "at the time of *first* imposing judgment or passing sentence" (emphasis added). Analysis of the cases under the previous law makes it clear that a court was to be given only one chance to make a valid recommendation and if it failed to take advantage of that opportunity it could not create another opportunity. It is our belief that the new section merely attempted to incorporate the essence of the judicial decisions as was done in other sections of the law, and that no change was made by the passage of section 241(b)(2) of the Immigration and Nationality Act.

Counsel argues also that the disposition of the case by imposing probation did not clothe the conviction with finality required by law. To possess the required "finality," it is not necessary that there be a *final* disposition; there must be some degree of finality. We have found this degree of finality present when the court so disposes of a case after a finding of guilty that the court does not without more have the power to sentence to the same extent and manner as it had before it took the action in question. Here, by placing the respondent on probation, the court lost the power to sentence to the same extent and manner that it had before it took the action. The court disposed of the case. It was no longer pending for action either actually or in theory. In fact, after five years the court could take no action in any event. If, within five years after the order of probation, the court desired to take further action, it could not do so as if the case were pending for sentence; the court first had to revoke the probation. To do this, the court had to file charges against the defendant and give him a hearing (sections 28.1131–28.1135, Michigan Statutes annotated, 1954 revision). The action of the court in placing a person on probation is equivalent to the suspension of sentence, a fact it recognizes when an order to this effect is entered (as it was here) after the convicted person has fin-

391

ished his probationary period. In any event, what is presented here is a suspended sentence. A suspended sentence has achieved sufficient finality to support an order of deportation (*United States ex rel. Fells* v. *Garfinkel*, 158 F. Supp. 524 (W.D. Pa., 1957), affd. per curiam 251 F.2d 846, C.A. 3; *Arellano-Flores* v. *Hoy*, 262 F.2d 667 (C.A. 9, 1958); *Matter of O——*, 7 I. & N. Dec. 539; *Matter of D——*, A-6904129, Int. Dec. No. 965).

Counsel argues that section 241(a)(4) of the Immigration and Nationality Act under which the respondent's deportation is sought is designed to have prospective rather than retroactive effect and should not be interpreted to permit deportation to be based upon convictions which occurred before the effective date of the act. Counsel contends that the decisions in *Lehmann* v. *Carson*, 353 U.S. 685, and *Mulcahey* v. *Catalanotte*, 353 U.S. 692, are not controlling on this issue because neither alien had a status based upon an original lawful entry, while the respondent does. A review of the cases reveals that Catalanotte had been admitted for permanent residence and Carson had a status of nondeportability under the law in effect prior to the Immigration and Nationality Act. It is also to be noted that 8 U.S.C. 1251(a)(4) which is the basis for deportation here was also involved in *Carson*.

We are without authority to consider constitutional objections raised. The alien's deportability is established by the record.

As to discretionary relief, counsel argues that the respondent has established good moral character and that there is no substantial evidence of lack of good moral character. It is his claim that the Government witnesses who appeared on the issue of discretionary relief are not credible. Respondent's long residence in the United States and his advanced age establish that his deportation would result in the requisite hardship to himself. He is married to a citizen of the United States and has three children of the union. The children also are citizens of the United States. One child is a minor and resides with the respondent. The other children are adults and have established their own households. Respondent's wife has been confined to the house as a result of an accident and requires considerable attention. She has assets of her own but he has failed to list them.

The special inquiry officer found that the respondent had failed to establish good moral character. The basis of the finding was that the respondent had knowingly consorted with criminals; had knowingly aided their efforts to commit crime; and had knowingly shared in the proceeds of at least one crime. The special inquiry officer has adequately summarized the evidence on this score and no purpose would be served in repeating it. We have carefully read the evidence of record and carefully considered counsel's contentions concerning the respondent's character.

The respondent associated with criminals. He could not have been unaware of the propensity for crime in at least one of these criminals. Respondent's transporting of these individuals under circumstances which would have raised alarming doubts in the mind of the most innocent, let alone one like respondent who had served considerable time in prison, raises such substantial doubts as to his good moral character as to require a finding that he has failed to carry his burden of establishing good moral character. Respondent's denial that he knew the purpose of the group he was transporting marks him as a person of the most doubtful credibility. We are convinced that the respondent is not a person of good moral character because of his activities with self-confessed criminals. Even if the respondent were statutorily eligible, it would be inconceivable to exercise discretionary relief favorably. The appeal will be dismissed.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.