Marian Hilary **MEDALION**, Appellee,

v.

**UNITED STATES of America**, Appellant.

No. 310, Docket 26064.

United States Court of Appeals Second Circuit.

Argued May 3, 1960.

Decided May 27, 1960.

Charles J. Hartenstine, Jr., S. Hazard Gillespie, Jr., U.S.Atty., New York City, for appellant.

Edward L. Dubroff, Brooklyn, N. Y., Abrams & Zuckerbrot, New York City, for appellee.

Before LUMBARD, Chief Judge, HAND, Circuit Judge, and JAMESON, District Judge.

HAND, Circuit Judge.

This is an appeal from an order of Judge Cashin granting the petition of Medalion, the appellee, to be naturalized (173 F.Supp. 249). The critical issue is whether the petitioner was disqualified because he had not been "physically present" in the United States for at least half the period of five years preceding the filing of his petition. § 1427(a), Title 8 U.S.C.A. The facts which are not in dispute are as follows: Medalion, a Pole, was admitted into the United States for permanent residence on August 24, 1951. He was in business and had to be absent from this country from time to time. On December 10, 1958, he filed a petition for naturalization in the Southern District of New York, based upon a continuous residence within the United States for five years preceding the filing of his petition (§ 307(a) of the Nationality Act of 1940). He had been "physically" present in the United States for only about fourteen months of the five years before he filed his petition, and § 316(a) of the Immigration and Nationality Act of 1952, requires his presence for half of that period. Hence if the 1952 Act applied he could not be admitted. To escape this defect he rests his case upon § 405(a) of the 1952 Act, 8 U.S.C.A. § 1101 note, which declares that nothing in it "shall be construed * * * to affect * * * any status, condition, right in process of acquisition * * * existing, at the time this Act shall take effect; but as to all such * * * statuses, conditions, rights, * * * the statutes * * * repealed by this Act are * * * continued in force and effect * * *" He argues that this language preserved his right to be naturalized after five years residence, in accordance with the terms of the 1940 Act, regardless of the period of his physical presence in the United States.

If the petitioner had fulfilled all the conditions of naturalization imposed by the First Act, we should have no doubt that § 405(a) would have covered his situation and that his petition should be granted. There would be no difficulty in allowing him to use his "status," "condition" or "right in process of acquisition" under the 1952 Act. The doubt we have is whether § 405(a) did not mean to continue the existing conditions upon the "statuses" etc. as these appear in the 1940 Act: that is, still to require a declaration of intention before the petition was filed. If that be not so, we must say that, although a "status" was preserved, it was not in all respects the same "status" as that required under the 1940 Act. Certainly, the petition did not literally satisfy the conditions prescribed by either Act: (1) he never filed a declaration, and (2) he had not been "physically" present for half the period of five years before filing his petition. Should he be allowed a privilege broader than that accorded by either Act? To repeat, when the Second Act accepted as sufficient any "status," "condition" or "right in process of acquisition," did it mean to

164

change them or only to take them over as they were? Whatever be the right answer, we are satisfied that at least the appellant's solution is not valid: i. e. even if the alien need not have filed any declaration of intention and need not have been physically present for more than half of the five preceding years, any privilege that § 405(a) of the Second Act gave him expired five years after that Act went into effect. That appears to us an even more drastic amendment of the Second Act than to say that the saving clause allows the elimination of the condition precedent of a declaration of intention.

Nevertheless, there is a body of authority, contrary to what we must own would have been our own interpretation, that we shall follow. It begins with the opinion of the Supreme Court in the United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615, in which the alien had filed a declaration before the Second Act went into effect, but had not physically resided in the United States for half of the five years preceding the filing of his petition which was after that Act took effect. The court decided that, since he had fully performed all the conditions required by the First Act before it was repealed, § 405(a) of the Second Act gave him the privilege of filing his petition after that Act took effect. However, in his opinion Justice Clark went further, and said (348 U.S. at page 536, 75 S.Ct. at page 518), that it "could be argued in the present case that it was Menasche's residence, rather than his filing of the declaration, which gave rise to his rights under § 405(a). And this approach would have the virtue of eliminating the inequitable treatment envisaged by the Government as regards those special groups of aliens who did not have to file declarations as a prerequisite to citizenship. But while our decision could be rested on this ground, it is sufficient here merely to refer to the provisions in § 405(a), derived verbatim from § 347(a) of the 1940 Act, preserving the 'validity' of declarations of intention 'valid at the time this Act takes effect.'"

It appears to us that, although this language was not necessary to the decision of the case then at bar, it would be improper for us to disregard it as dictum. It is in accord with other language of the court in the same opinion as to the purposes of the Second Act. For example, 348 U.S. on page 535, 75 S.Ct. on page 518: "The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress." Again in 348 U.S. on page 536, 75 S.Ct. on page 518: "the congressional resolution of the Bertoldi—Aberasturi conflict indicates a willingness, at least in some situations, to preserve rights in process of acquisition without requiring affirmative action on the part of the alien." This language becomes especially pertinent in the case at bar in which the alien tried to make the declaration required by the First Act but was refused leave to file it. Moreover, even though it were permissible for us not to follow the quotation from United States v. Menasche, supra, there has been such a concord of decisions that have relied upon it that we should not feel at liberty to disregard it. The Third and Ninth Circuits have treated it as imperative. Aure v. United States, 9 Cir., 225 F.2d 88; Petition of Wolff, 270 F.2d 422. Six District Judges have also so held: Petition of Kaufteil, D.C.S.D.N.Y., 152 F.Supp. 538; Petitions of F— G— and E— E— G—, D.C.S.D.N.Y., 137 F.Supp. 782; Petition of Pauschert, D.C.S.D.N.Y., 140 F.Supp. 485; Petition of Pinner, D.C.N.D.Cal., 161 F.Supp. 337; Petition of Rosenbaum, D.C.S.D.N.Y., 171 F.Supp. 141; Petition of Zahario, D.C.S.D.N.Y., 166 F.Supp. 314. It appears to us that in the face of such unanimity we should accept the language as authoritative until the Supreme Court disclaims it. Anything else would only serve to confuse the administration of the Second Act which is being applied in numberless cases.

Order affirmed.