Andrija ARTUKOVIC, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 81–7415.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1982.

Decided Dec. 1, 1982.

Ronald H. Bonaparte, Los Angeles, Cal., for petitioner.

Allan A. Ryan, Jr., Director, argued, for respondent; Clarice R. Feldman, Los Angeles, Cal., Rodney G. Smith, Washington, D.C., on brief.

Before GOODWIN and SCHROEDER, Circuit Judges, and SOLOMON·* District Judge.

GOODWIN, Circuit Judge.

Andrija Artukovic filed a petition to review an order of the Board of Immigration Appeals revoking his stay of deportation under § 243(h) of the Immigration and Nationality Act of 1952. 8 U.S.C. § 1253(h) (as amended 1978) [1]. We vacate the order of the board.

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Section 243(h), 8 U.S.C. § 1253(h) provides:
   "(1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion;
   (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—
   (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion, . . ."
8 U.S.C. § 1253(h), *as amended by* Act of October 30, 1978, Pub.L. No. 95–549, Title I, § 104,

92 Stat. 2066, and Act of March 17, 1980, Pub.L. No. 96–212, Title II, § 203(e), 94 Stat. 107.
   Section 1251(a)(19) provides:
   "Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who . . .

 . . . . .

(19) during the period beginning ·on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with—
   (A) the Nazi government of Germany,
   (B) any government in any ·area occupied by the military forces of the Nazi government of Germany,
   (C) any government established with the assistance or cooperation of the Nazi government of Germany or
   (D) any government which was an ally of the Nazi government of Germany,
ordered, incited, assisted, or otherwise participated in the persecution of any person be-

Artukovic entered the United States in 1948 on a visitor's visa using a false name. He was given two extensions of his temporary stay, but did not depart when they expired.

In 1951, the Immigration and Naturalization Service brought deportation proceedings against Artukovic because he had entered under a false passport and because he had overstayed his visitor's visa. Artukovic applied for a suspension of deportation under Section 19(c) of the Immigration Act of 1917 (39 Stat. 874). The Immigration and Naturalization Service hearing officer denied the suspension after a hearing in 1952.

In 1953, the hearing officer's decision was affirmed by the Board of Immigration Appeals. Because Artukovic had failed to qualify for suspension of deportation under section 19(c), the board ordered him deported. That order was not executed because of a pending request by the Yugoslavian government to extradite Artukovic for trial on 22 counts of murder. See *Artukovic v. Boyle,* 140 F.Supp. 245 (S.D.Cal.1956), *aff'd sub nom., Karadzole v. Artukovic,* 247 F.2d 198 (9th Cir.1957), *vacated and remanded,* 355 U.S. 393, 78 S.Ct. 381, 2 L.Ed.2d 356 (1958).

On January 15, 1959, the United States Commissioner for the Southern District of California denied extradition because the Yugoslavian government had failed to offer sufficient evidence to support its indictment and there was no evidence to provide reasonable or probable cause to believe that Artukovic was guilty of participation in crimes committed by others in the government. *United States v. Artukovic,* 170 F.Supp. 383 (S.D.Cal.1959).

On May 22, 1959, the Regional Commissioner of the Immigration and Naturalization Service granted Artukovic a stay of deportation under § 243(h) of the Immigration Act of 1952 on the ground that Artukovic would be subject to persecution if he were deported to Yugoslavia.

> cause of race, religion, national origin, or political opinion."

In 1977, when the commissioner attempted to revoke the stay, Artukovic obtained a district court injunction preventing the government from revoking the stay except by motion before the board to reopen or reconsider under §§ 3.2, 3.8, or 242.22 of Title 8 of the Code of Federal Regulations. *Artukovic v. Bell,* No. CV–77–2333–IH (C.D.Cal. September 19, 1977) (amended February 27, 1980).

In 1978, Congress amended the Immigration Act to provide that members of Nazi governments of Europe who had persecuted people because of their race, religion, national origin, or political opinion were deportable and were not eligible for stays under § 243(h). Pub.L. No. 95–549, Title I, §§ 103–04, 92 Stat. 2065–2066 (1978) (codified at 8 U.S.C. §§ 1251(a)(19), 1253(h)). The Immigration and Naturalization Service then moved the board to reconsider Artukovic's stay. Artukovic argued that the stay could not be revoked without a reopening for a full factual hearing. The board revoked the stay without a hearing. It held that the factual findings of the 1953 decision were sufficient to determine that Artukovic was no longer eligible for a § 243(h) stay and applied administrative *res judicata.* This appeal followed.

Artukovic argues that: (1) the 1978 amendment to § 243(h) does not apply to his case; (2) the 1978 amendment is unconstitutional; and (3) the board did not follow proper procedures in revoking his stay.

REACH OF THE 1978 AMENDMENT

Artukovic contends that § 405(a) of the Immigration Act of 1952, 66 Stat. 166 (codified at 8 U.S.C. § 1101, note (1976)), was intended to insure that only the 1917 Immigration Act would apply to all proceedings started before 1952. He argues that because his deportation proceedings began before 1952, the 1978 amendment to § 243(h) does not apply to his case.

Section 405(a), 8 U.S.C. § 1101, note, provides:

> 8 U.S.C. § 1251(a)(19), *as amended by* Act of October 30, 1978, Pub.L. No. 95–549, Title I, § 103, 92 Stat. 2065.

(a) "Nothing contained in this Act, [this chapter] unless otherwise specifically provided therein, shall be construed to affect the validity of any . . . proceeding . . . or any status . . . at the time this Act [this chapter] shall take effect; but as to all such . . . proceedings . . . the statutes . . . repealed by this Act [this chapter] are, unless otherwise specifically provided therein, hereby continued in force and effect. . . ."

This is merely a "savings clause" to insure that the 1917 Act would continue to apply to cases pending in 1952 if not "otherwise specifically provided" for in the 1952 Act. *See Lehmann v. Carson,* 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122 (1957). It does not bar Congress from passing legislation that affects the status of anyone whose immigration proceedings began before 1952. Moreover, the legislative history of the 1978 amendment indicates that Congress intended it to apply retroactively to Nazi war criminals who were not deportable under earlier immigration laws. H.Rep. No. 95–1452, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4700, 4702. The 1978 statute applies to this case.

CONSTITUTIONALITY OF THE 1978 AMENDMENT TO § 243(h)

■ Before 1978, § 243(h) of the Immigration Act of 1952 authorized the Attorney General to stay the deportation of any alien who would be subject to persecution if deported. The 1978 amendment withdrew the protection of § 243(h) from members of the Nazi governments of Europe who had "ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion." 8 U.S.C. §§ 1253(h)(2)(A) and 1251(a)(19).

■ Artukovic contends that the 1978 amendment is a bill of attainder and ex post facto law because it withdrew the basis for his stay of deportation. Deportation, however, is not a punishment; it is simply a refusal by the government to harbor persons whom it does not wish to harbor. *Bugajewitz v. Adams,* 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913). The prohibition against ex post facto laws and bills of attainder does not apply to deportation statutes. *Marcello v. Bonds,* 349 U.S. 302, 314, 75 S.Ct. 757, 764, 99 L.Ed. 1107 (1955) (construing ex post facto clause); *Rubio de Cachu v. Immigration & Naturalization Serv.,* 568 F.2d 625, 627–28 (9th Cir. 1977) (bill of attainder clause).

■ Congress may establish grounds for deportation that apply retroactively. *Lehmann v. Carson,* 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122 (1957); *Mulcahey v. Catalanotte,* 353 U.S. 692, 77 S.Ct. 1025, 1 L.Ed.2d 1127 (1957). In this case, Congress has merely withdrawn the basis for Artukovic's temporary, discretionary stay of deportation. If Congress may establish retroactive grounds for deportation, it has the privilege of restricting the discretionary relief available to aliens for whom there already exist grounds for deportation. Artukovic has no basis for asserting that the 1978 amendment does not apply to his case.

■ Artukovic also argues that the word "persecution" in the 1978 amendment is unconstitutionally vague. The term "persecution" appears in at least two other immigration statutes. *See* 8 U.S.C. §§ 1153(a)(7), 1253(h). This court has interpreted "persecution" in § 1253(h) as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Kovac v. Immigration and Naturalization Service,* 407 F.2d 102, 107 (9th Cir.1969). *Accord, Moghanian v. U.S. Dept. of Justice, etc.,* 577 F.2d 141, 142 (9th Cir.1978). The Board of Immigration Appeals defines the term more narrowly in relation to § 1253(h) as threatening a person's "life or freedom . . . on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Moghanian,* 577 F.2d at 142. Under these circumstances, Artukovic's vagueness challenge is not persuasive.

THE BOARD'S PROCEDURES IN REVOKING THE STAY

■ Artukovic asserts that the board should not have revoked his stay under the

1978 law without first granting him an evidentiary hearing before an immigration judge, whose decision could then be appealed to the board. We agree.

The regulations give the board jurisdiction over motions to reopen or to reconsider its decisions, including stays of deportation. 8 C.F.R. § 3.2. Artukovic's stay was granted by the Regional Commissioner, not the board, but the regulations treat decisions made by the commissioner before 1962 as decisions of the board for purposes of reopening or reconsideration. Therefore, the board had jurisdiction over the government's motion to reconsider the commissioner's 1959 stay of Artukovic's deportation.

Although a motion to reopen must offer to prove "new facts" at a "reopened hearing," 8 C.F.R. § 3.8(a), there is no such requirement for a motion to reconsider. The board interprets this regulation to permit reconsideration rather than reopening where a motion requests the board to apply a change in the law, because there are no "new facts" to prove. Thus the board relied on administrative *res judicata* in revoking Artukovic's stay. While the board's interpretation is entitled to the deference ordinarily given to an agency's interpretation of its own procedural regulations, *see Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 544–55, 98 S.Ct. 1197, 1211–17, 55 L.Ed.2d 460 (1978), reconsideration was not an appropriate procedure in Artukovic's case. The 1978 law's creation of new factual categories requires a reopened hearing to determine whether Artukovic comes within the new categories.

The issue raised by the government's motion to reconsider was whether the 1978 amendment to § 243(h) made Artukovic ineligible for a stay. The government sought to rely on a suspension of deportation hearing, initiated by Artukovic almost thirty years earlier, to prove that Artukovic fell within a statute passed in 1978. Basic principles of *res judicata* and of collateral estoppel preclude this procedure. Even where an issue has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is generally not precluded where there has been an intervening change in the governing law or where the burden of persuasion has shifted from the time of the first action to the second. *See* Restatement (Second) of Judgments § 28 (1982). Moreover, in the administrative law context, the principles of collateral estoppel and *res judicata* are applied flexibly. *See, e.g., United States v. Lasky,* 600 F.2d 765, 768 (9th Cir.1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

In the 1952–1953 deportation hearings, the primary issue was whether Artukovic had entered and remained in this country illegally, by entering under a false name and remaining after his visa had expired. The burden was on Artukovic to show that he was entitled to a discretionary suspension of deportation. Artukovic attempted to qualify for suspension on the grounds of economic detriment to his one and one-half year old United States citizen child. The hearing officer found that he had failed to prove serious economic detriment, and that he had not sustained his burden of proving good moral character.[2]

Under the 1978 law, Congress intended that the government prove the alien's membership in the described class by "clear, convincing and unequivocal [sic] evidence." H.Rep. No. 95–1452, 95th Cong. 2d Sess. 3 (1978), 1978 U.S.Code Cong. & Ad. News 4712.

The 1978 statute places the burden on the government. The offensive use of collateral estoppel raises a question of fair procedure. There are, of course, cases in which the offensive use of collateral estoppel is both efficient and fair to the parties. *See,*

---

2. We also note that the decision made reference to the then-pending extradition proceeding by the Yugoslavian government. This proceeding, which was subsequently dismissed on the merits, may have been a significant factor in the decision to withhold discretionary relief at that time.

*e.g., Mendoza v. United States,* 672 F.2d 1320 (9th Cir.1982). But this is not such a case.

The government may not rely on a hearing convened thirty years ago for a different purpose raising different issues under a different statute as a substitute for the evidence required by the 1978 law. Due process requires that the government must reopen the case for a new hearing at which it must prove by clear and convincing evidence that Artukovic possesses the personal culpability which would bring him within the 1978 law. The 1953 hearings were not, and could not have been, directed to this question.

Vacated.

SOLOMON, District Judge:

I dissent.