**In the Matter of SYNFAX MANUFAC-TURING, INC., Debtor.**

**Bankruptcy No. 89–06818.**

United States Bankruptcy Court, D. New Jersey.

Dec. 19, 1990.

Cole, Schotz, Bernstein, Meisel & Forman, P.C. by Jeffrey S. Feld, Hackensack, N.J., for debtor.

Hannoch Weisman, P.C. by Ronald M. Sturtz and Stuart Glick, Roseland, N.J., for Summit Trust Co.

Lehman, Wasserman, Jurista & Stolz, P.C. by Shari A. Rivkind, Millburn, N.J., for Ramfair Associates and Mar Realty.

Eichler, Forgosh, Gotilla & Rudnick by Douglas A. Kent, Chatham, N.J., for Official Unsecured Creditors Committee.

State of N.J., Office of Atty. Gen. by Rachel Jeanne Lehr, Deputy Atty. Gen., Trenton, N.J.

Stryker, Tams & Dill by Stephen H. Knee, Newark, N.J.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This case comes before the court upon motion of the debtor for entry of an order directing it to turn over proceeds from the sale of certain personal property to Summit Trust Company, a secured creditor in this case. Subsequent to the filing of the motion and responses thereto, and a hearing on the motion and responses, this court, pursuant to separate motion, converted the case from one under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101,[1] *et seq.*, to one under chapter 7; the order was filed on August 30, 1990.

Because conversion of this case may have had some bearing on the positions taken by the respective parties to the instant motion, this court reopened argument in the case and invited the trustee appointed to administer the assets of the debtor's estate, as well as all other interested parties, to make any further arguments which the conversion may have engendered. The court has considered the motion, memoranda, briefs, and arguments of the parties and has determined that Summit Trust is entitled to receive the proceeds of an earlier sale of the debtor's property which are currently being held in escrow, and hereby issues its order with this opinion granting the debtor's motion.

This case was originally commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 29, 1989. Synfax continued operations under the protection of this court but simultaneously advertized for sale all of its personal property, including its technology and liquid plant equipment, all of which had an appraised value of $661,000.00. Some of the personal property was sold for $306,000.00, leaving assets with an appraised value of $355,000.00 in the estate.

---

1. All further references to the Bankruptcy Code will be made by section number, only.

On June 14, 1990, the debtor filed its motion requesting an order of this court authorizing the sale of the remainder of its personal property to Nashua Corporation, for a sales price of $500,000.00. The sales price was, therefore, approximately $150,-000.00 more in compensation than the value assigned to the property. In the order authorizing sale free and clear of liens, claims, encumbrances and responsibility under § 363 (entered July 10, 1990), the court ordered that proceeds should be disbursed only on further order of the court.

In a separate order filed July 27, 1990, this court ordered that $350,000.00 of the proceeds from the sale to Nashua be turned over to Summit Trust Co. The remaining $150,000.00 of the proceeds was to be held in escrow by Summit pending further order of the court. It is this $150,-000.00 which is the subject of the current motion to turnover the proceeds of sale to Summit Trust Co.

The debtor's motion was opposed by the New Jersey Department of Environmental Protection (DEP) and Ramfair Associates and Mar Realty Company, the debtor's former landlords. DEP asserted that no funds should be released until the clean-up required by N.J.S.A. 13:1K–12 is completed, and that the proceeds remaining in escrow should be applied to that clean-up of the debtor's former leased premises. The landlords asserted several grounds in their objection to the motion; essentially, however, the landlords rely upon the inequity of the situation. They claim that the creation of a secured position for Summit Trust on any of the debtor's assets constitutes an insider preference, that changed circumstances since the entry of the cash collateral order in the chapter 11 case justify modification of that order in order to permit payment of rent, that the claim of the landlords constitutes a claim which may be charged against the bank under 11 U.S.C. § 506(c), and the environmental clean-up problems take precedent over Summit Trust's position as a secured creditor.

This motion, and the objections thereto, raise issues concerning the administration of the debtor's estate, allowance or disallowance of claims against the estate, avoidance of preferential transfers, the determination of the validity, extent, or priority of a lien, and other issues relating to the sale of property of the estate or liquidation of the estate's assets, all of which are core proceedings under 28 U.S.C. § 157(b)(2). This opinion constitutes the final order of this court, inclusive of findings of fact and conclusions of law.

Initially, the court notes that the New Jersey Department of Environmental Protection withdrew its claim to the funds at issue here at the continued hearing on this matter. It appears, from the representation made by the DEP, that the clean-up of two of the debtor's sites is complete, and the Department had made no indication that any clean-up of the third is necessary.

The landlords, however, assert that the environmental problems are not moot, as they paid for the clean-up which led to the Department's decision to withdraw its claim to the funds. The landlords assert they should be permitted an administrative allowance roughly equivalent to the amounts spent to accomplish the clean-up, which they contend was the debtor's responsibility. The final party in interest, the trustee for the debtor, recommended that the funds be transferred to the bank on the condition that the trustee's rights to bring an action against the bank under 11 U.S.C. § 547 were preserved, as well as the trustee's right to assert claims for preserving collateral of a creditor under § 506(c).

■ The landlords argue that Summit Trust Company is an insider, or potential insider, of the debtor such that the security interest granted by the debtor to Summit in the amount of $600,000.00 may be set aside as a preferential transfer. If this is true, the bank has no secured status granting it priority over other creditors with respect to payment from proceeds of the sale of the personal property of the debtor. Although the landlords state that it is imperative the issues relating to the potential insider status of Summit Trust Company and avoidability of liens be decided prior to turn over of funds from sale to Summit Trust Com-

pany, this court notes that the appointment of the chapter 7 trustee has created a duty upon that trustee to investigate transfers of any interest in the property of the debtor or obligations incurred by the debtor.

The debtor and Summit Trust Company both vehemently object to the characterization of the extension of credit to the debtor as a preferential transfer and assert that the bank cannot qualify as an insider under § 101(30), without which qualification any such alleged insider preference must fail.

The trustee is charged with the duty and obligation of investigating this transfer, among others, and bringing whatever actions he, in his best judgment, deems to be beneficial to the estate (§ 707). Considering that this court only recently filed the order converting the case, and the fact that the trustee has a substantial period of time remaining prior to the expiration of the limitations period established in § 546, this court sees no need to usurp the trustee's duties nor does it see why any one creditor should be permitted to do so to the detriment of the other creditors. The trustee will investigate this transfer as a matter of course in the performance of his duties and bring whatever action he deems to be warranted. Until that time, this court will not issue an advisory opinion on the merits of such an action nor on the advisability of bringing it.

■ The second argument put forth by the landlords is that the cash collateral order entered by this court, which provides a lien for Summit Trust Company on the debtor's assets and gives it a priority claim for administrative expenses, should be modified to permit payment to the landlords for the debtor's use and occupancy of the leased premises. They contend they should be on equal footing with those other administrative claimants with regard to payments to them as reimbursement for clean-up costs, and that equity requires the order be amended so that they are paid in light of the failure of the debtor to pay its post-petition obligations, *i.e.*, rent.

Congress has provided for situations such as this in § 726. Under subsection (b)

of that section, administrative claims from a prior chapter 11, 12, or 13 case are subordinated to administrative claims of a subsequent chapter 7. All administrative claims are subordinated to the claim of a secured creditor to the extent that the creditor holds an allowed claim secured by a lien under § 724(b)(1). It follows that the landlord's claim, if allowed, is third in line for payment under the statutory scheme behind secured claims and chapter 7 administrative claims.

■ The landlords next contend they are entitled to an administrative claim under § 506(c), which they assert is chargeable to funds to be paid to Summit Trust Company. They assert the debtor's use and occupancy of the leased premises benefitted Summit Trust because it permitted the debtor the freedom to dispose of its inventory slowly and obtain the best price therefor, and cite in support of their position *In re Corona Plastics, Inc.*, 99 B.R. 231 (Bankr.D.N.J.1989). In *Corona Plastics*, then Chief Judge Vincent J. Commisa held that when a claimant shows that a secured creditor derives benefit from some action of or expense incurred by another creditor, an administrative claim under § 506(c) will lie.

It is clear from a reading of the briefs, opposition papers, and argument of counsel at both hearings on this motion that the landlords' argument relating to use and occupancy of the premises is closely intertwined with its bare assertion that they should be reimbursed for funds expended by them in completing the debtor's purported required compliance with the Environmental Clean-up Responsibility Act, N.J. S.A. 13:1K–6, *et seq.* (ECRA). These issues are so closely intertwined, in fact, that it appears the ultimate issue for this court to decide is whether or not the landlords have a claim for expenses incurred in cleaning up the debtor's former premises, and whether such claim should immediately attach and take priority over the claim of a secured creditor to which no objection has yet been made.

■ As to the specific issue of whether the environmental clean-up costs should be accorded administrative status in any claim filed for reimbursement by the landlords,[2] the court notes that clean-up costs are accorded administrative priority where compliance with environmental laws requiring such clean-up is required due to the operation of state or federal law, both as to premises occupied by the debtor post-petition, *In re Chateaugay Corp.,* 112 B.R. 513 (S.D.N.Y.1990), and as to premises where the debtor or its successor trustee is not conducting business but disposing of assets of the estate. *In re Corona Plastics, Inc., supra.* Although these clean-up costs do constitute an administrative expense, they do not take priority over the secured claim of a creditor with a valid and perfected security interest in either the assets, accounts receivable, or proceeds of sale of other assets sold by the debtor or trustee in liquidating the estate. *In re Better–Brite Plating,* 105 B.R. 912 (Bankr.E.D. Wis.1989).

■ In this case, the court is presented with a sale of personal property, not real property, of a debtor whose leased premises are subject to the clean-up requirements of ECRA. Failure to comply with the Act and institute a clean-up plan is punishable by a fine of $25,000.00 for each offense; ECRA also provides for avoidance of the sale or transfer of "an industrial establishment" or "real property used in connection therewith" if compliance is not had. N.J. S.A. 13:1K–13. The Act defines "industrial establishment" by reference to several federal classifications and designations which identify both "industrial establishment" and "facilities" subject to standard industrial classifications. N.J.S.A. 13:1K–8.

The fact that "industrial establishment" is defined as a place of business qualified by other definitional statutes suggests that the Act contemplates improved real estate; indeed, the only logical reading of the statute is that the industrial establishment to which the Act refers is improved real estate which includes a "plant" as that term is used in ordinary reference to an industrial site. While such a plant may include buildings, docks, loading base, and fixtures attached to the buildings on the improved real estate, this court is unable to view the statute as contemplating anything further, specifically personal property. While some personal property[3] which bears a direct relation to the cause of an environmental hazard could be contemplated by this Act, this court does not believe that the legislature of the State of New Jersey intended that the Act apply to transfers of personal property not directly involved in the generation of the hazardous substance or waste for which clean-up is mandated under the Act.

Although the landlords assert that such is the intent of the legislature, this court can see only the problems which could develop from such a reading and no corresponding benefit. Taken to its most illogical extreme, such an argument would mandate that the sale of all personal property by the trustee in a chapter 7 case, such as unused boxes of invoices, copier paper, ballpoint pens, desks, and other normal items found in any office, would be subject to the ECRA duties imposed upon the operator of the industrial establishment. The funds created would also be earmarked first for environmental clean-up while identical sales in other cases would not.

■ The Act itself specifically provides that the owner or operator, or both, of an industrial establishment is responsible for the clean-up required by ECRA. N.J.S.A. 13:1K–9. It does not provide for responsibility to fall on the shoulders of creditors if neither party complied. In its findings and declarations, the legislature specifically states that closing of operations and "the transfer of real property utilized for the generation, handling, storage and disposal of hazardous substances and wastes" should be done in such a way as to mitigate

---

**2.** The court again notes that the Department of Environmental Protection has withdrawn its claim to the funds due to the completion of the site clean-up by the landlords.

**3.** The court specifically refers to personal property in the nature of an item which may or may not qualify as a fixture.

potential environmental risks. N.J.S.A. 13:1K–7. The legislature did not include transfers of personal property in its findings.

At issue here, of course, is the closing of operations; any "transfer" of the industrial establishment is accomplished in this case by the release of the debtor's formerly leased premises to its landlords. While ECRA may normally apply to that release of leasehold interest, it is simply not possible to read the statutes in any rational way to apply to anything other than sales or transfers of, or cessation of operations on, real property or improvements thereon. By its own terms, the legislature has stated the Act does not apply to sales or transfers of personal property which did not directly contribute to the environmental hazard complained of.

As previously stated in this opinion, while the DEP's or the landlords' claims may be administrative claims to be decided at a later time by this court after those administrative claims have been filed and an objection thereto is made, at this point the only question is whether such claim has priority over a creditor's secured claim when that creditor seeks to be paid for its secured interest from proceeds of sale of its collateral. This court holds that cleanup costs under ECRA do not have priority over that creditor's claim to the extent it is secured by the value of (or proceeds from the sale of) personal property serving as collateral. It follows, therefore, that neither the landlords nor the DEP have a claim to the proceeds of this sale of personal property which is superior to that of the secured creditor, Summit Trust Company.