**In re HELDOR INDUSTRIES, INC., a Connecticut Corporation, Debtor.**

**Bankruptcy No. 90–35602.**

United States Bankruptcy Court,
D. New Jersey.

Sept. 6, 1991.

Frank J. Vecchione, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for debtor.

Peter Sarasohn, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for Creditors Committee.

Allan S. Brilliant, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for New Bank of New England, N.A.

Rachel Jeanne Lehr, Office of Atty. Gen. of N.J., Trenton, N.J., for Dept. of Environmental Protection.

Barbara H. Katz, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for HI Acquisition Corp. and Aqua Fab Industries, Inc.

Stephen B. McNally, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., Newark, N.J., for One Cory Road Associates.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This opinion addresses an objection by the New Jersey Department of Environmental Protection ("DEP") to a proposed settlement involving distribution of the proceeds of a sale of substantially all of the Debtor's assets. Under the settlement, most of the sale proceeds would be paid to New Bank of New England, N.A. ("The Bank"), which had a lien on virtually all of the Debtor's assets. The balance of the sale proceeds would be used to pay expenses of administering the bankruptcy case. The DEP objects because nothing would be set aside from the sale proceeds for compliance with the Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K–6 et seq. ("ECRA"). This court has jurisdiction under 28 U.S.C. §§ 1334(a) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (N) and (O). This shall constitute the court's findings of fact and conclusions of law.

### I.

### FINDINGS OF FACT

The Debtor's principal business was the manufacture and sale of prefabricated swimming pool packages and related products. It leased premises across the country for use in its operations, including two in New Jersey. Its corporate headquarters and a manufacturing operation were located in Morristown, New Jersey on real property leased from One Cory Road Associates ("Cory"). Another manufacturing operation was located in Robbinsville, New Jersey, on property which the Debtor leased from another landlord. The Debtor suffered large losses during 1989 and 1990, due primarily to a softening of demand for its products. The Debtor filed a petition for reorganization under chapter 11 of title 11, United States Code (the Bankruptcy Code) on December 7, 1990, and has remained a debtor in possession.

The Bank was owed more than $10,000,000 on the petition date, and was secured by liens on virtually all of the Debtor's assets. Shortly after the petition was filed the court authorized the Bank to loan the Debtor an additional $500,000, which was also secured by liens on all of the Debtor's assets. It had apparently been clear for some time, however, that the Debtor would not be able to remain in business. After attempting to sell its business for over six months, the Debtor reached an agreement on January 24, 1991 to sell substantially all of its assets to HI Acquisition Corp. ("HI"), with payment of the purchase price guaranteed by HI's parent, Aqua Fab Industries, Inc. ("Aqua Fab").

When the Bank learned that the price to be paid for the Debtor's assets would be approximately $3,000,000 less than the amount due to the Bank, the relationship between the Bank and the Debtor became adversarial. The Debtor applied to the court for approval of the sale agreement under Code subsections 363(b) and (f), and the Bank objected on several grounds. It considered the purchase price to be inadequate. The Bank also objected because the sale agreement required that the Debtor comply with ECRA. The Official Unsecured Creditors Committee ("the Committee") objected for the same reasons. A hearing was held on February 14, 1991, and the court denied the Debtor's application for failure to comply with Code subsection 363(f).[1] The court therefore did not rule on the objections to the provisions requiring compliance with ECRA. The Debtor then continued to negotiate with HI and Aqua Fab, and to search for other prospective purchasers. The Bank simultaneously retained a consultant for advice as to how to realize the best price for the Debtor's assets. The consultant advised the Bank that

acceptance of the offer by HI and Aqua Fab, to which the Bank had objected and which the court had disapproved, would yield the highest available price. The Bank therefore urged the Debtor, HI and Aqua Fab to enter into a new sale agreement, which they did. The new agreement (hereinafter "the amended sale agreement") differed in some respects from the original sale agreement. Unlike the original sale agreement, the amended sale agreement did not contain terms requiring that the Debtor must comply with ECRA. The Bank consented to the amended sale agreement.

Meanwhile, the Committee filed a complaint against the Bank seeking to recover preferential and fraudulent transfers and to subordinate the Bank's claim.[2] When the court scheduled a hearing on the Debtor's application for approval of the amended sale agreement, the Committee filed an objection. The hearing on the amended sale agreement took place on March 25, 26 and 27, 1991. As a result of extensive negotiations, the parties reached a settlement of the Committee's objection to the sale and of its complaint against the Bank. The terms of the proposed settlement, which requires court approval, were read into the record on March 26, 1991. On March 27, 1991, the court made required findings 1) that the sale was in the best interests of the Debtor, the estate and its creditors, 2) that adequate notice of the sale was provided, 3) that the purchaser was in good faith, and 4) that the purchase price was fair value in that it was the best price which could be obtained for the Debtor's assets under the circumstances.[3] The court entered an order approving the sale on March 27, 1991.

---

1. Code § 363(f) states: The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such

entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

2. See 11 U.S.C. §§ 547, 548 and 510(c).

3. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir.1986) and In re Lionel Corp., 722 F.2d 1063 (2d Cir.1983).

The DEP received notice and opportunity for a hearing on any objections which it might wish to file to the proposed sale. The DEP received notice that the amended sale agreement did not contain terms requiring compliance with ECRA. The DEP, however, did not file or otherwise raise any objection to the sale. The order approving the sale provided in pertinent part that the Debtor's assets were sold free and clear of all liens, claims, restrictions and other interests, with exceptions not relevant here. The order also provided that the purchaser is not assuming any liabilities or obligations which accrued on or before March 26, 1991, including:

> (b) claims related to pollution or other adverse effects upon human health or the environment, including, but not limited to, the release in connection with any of Debtor's (or its predecessors') operations or any of the Acquired Assets of a hazardous substance, pollutant, contaminant, or other substance regulated under any local, state or federal law, ordinance or regulation, and claims related to Debtor's (or its predecessors') failure to comply with any such law, statute, regulation or ordinance....

The DEP was served with a copy of this order on the date of its entry. No appeal was filed. The Debtor, HI and Aqua Fab then closed the sale. The sale proceeds of approximately $7,100,000 have been held in escrow pending approval of the settlement.

The parties to the settlement agreement are the Debtor, the Committee, the Bank, HI and Aqua Fab. The terms which were read into the record on March 26, 1991 were reduced to writing. The primary terms of the settlement agreement are as follows:

· The Debtor and the Committee will exchange releases with the Bank, and the Committee's complaint against the Bank shall be dismissed with prejudice.

· The Debtor, the Committee, their professionals and all creditors waive any right to surcharge the Bank under Code subsection 506(c) for costs of preserving and disposing of the Bank's collateral.

· The court must have approved the sale agreement.

· The estate shall retain $1,153,000 from the sale proceeds, and shall create three funds: $500,000 for fees and expenses of professionals incurred in administering the estate; $517,000 for other administrative expenses through the closing adjustment date of March 26, 1991; and $136,000 for administrative expenses after the closing adjustment date. If the amount of such funds exceeds the total administrative expenses chargeable thereto, any excess will be turned over to the Bank.

· The balance of the sale proceeds, approximately $6,047,000, shall be paid to the Bank in satisfaction of the secured portion of its claim against the Debtor.[4]

· All accounts receivable not purchased by HI (*i.e.* those more than 120 days old and those sent out for collection) are abandoned to the Bank. The Bank has the right to retain the first $400,000 collected thereon. If there are any further collections, the Bank shall retain 60% and the estate[5] shall receive 40%.

· All causes of action to recover preferences, fraudulent transfers and other transfers under the avoiding powers of Code sections 544 through 549 shall remain vested in the estate. The first $400,000 recovered shall remain in the estate. If there are any further recoveries, the estate shall retain 60% and the Bank shall receive 40%.

· HI shall provide the Debtor and the Bank office space, utilities and phone services for three months, and computer services for two months, at HI's Morristown facility at no charge for purposes of winding down the administration of the estate.

· If the settlement agreement is not approved, the sale of assets shall not be affected. The parties other than the pur-

---

**4.** Code § 506(a) provides that a creditor has a secured claim to the extent of the value of its interest in its collateral, and an unsecured claim to the extent of any deficiency.

**5.** Code § 541 provides that the filing of a bankruptcy petition creates an estate consisting of all legal and equitable interests of the debtor in property as of the commencement of the case.

chaser shall then be returned to their respective positions immediately preceding March 26, 1991, the date of the settlement agreement.

On the Debtor's application, the court issued an order to show cause why the settlement agreement should not be approved. Two objections were filed. One Cory Road Associates ("Cory") objected to the creation of separate funds from the portion of the sale proceeds retained by the estate. That objection was overruled for reasons set forth on the record on July 9, 1991. It shall not be addressed further in this opinion.

The court reserved decision on July 9th on the other objection, which was filed by the DEP and which is the subject of this opinion. The DEP states that it did not object to the sale because the original sale agreement provided for compliance with ECRA. Noting that the amended sale agreement did not provide for such compliance, the DEP objects to distribution of the sale proceeds without such compliance.

It was stated at the hearing on approval of the settlement that as to the real property which the Debtor had leased in Robbinsville, New Jersey, the DEP is apparently prepared to issue a "negative declaration," which is essentially a determination that there is no contamination. So the focus of the DEP's objection is the real property which the Debtor leased in Morristown, New Jersey. The Debtor's lease of that property was not assumed and assigned to HI as part of the sale agreement.[6] However, it was represented at the hearing on the settlement agreement that HI is negotiating with Cory, the owner of that property, on a new lease. It was also represented that Cory is taking steps to have any contamination cleaned up, and to obtain DEP approval for such cleanup. It was further represented that Cory's environmental consultant has identified some areas requiring minor cleanup. It was also noted that the process of obtaining DEP approval for a cleanup plan and completing a cleanup can take two years or more.

## II.

## STANDARDS FOR APPROVING SETTLEMENTS

Bankruptcy Rule 9019(a) provides that on motion and after a hearing on notice to creditors, the court may approve a compromise or settlement. The settlement of time consuming and burdensome litigation is encouraged, especially in bankruptcy cases. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *In re Penn Central Transportation Co.*, 596 F.2d 1102 (3d Cir.1979). Approval of a proposed settlement is within the discretion of the bankruptcy court. *In re Neshaminy Office Building Associates*, 62 B.R. 798, 803 (E.D.Pa.1986). The court must determine whether the proposed settlement is in the best interests of the estate. *Matter of Energy Co–Op., Inc.*, 886 F.2d 921, 927 (7th Cir.1989). The four factors which the court ordinarily considers in determining the adequacy of a settlement are (a) the probability of success in the litigation, (b) any difficulties to be encountered in collection, (c) the complexity of the litigation and the expenses, inconvenience and delay necessarily attending it, and (d) the paramount interests of the creditors. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bkrtcy.E.D.Pa.1987). The ultimate question is whether the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

The court considered all of these principles in connection with Cory's objection to the settlement. As previously noted, the court overruled Cory's objection and concluded that subject to resolution to the DEP's objection, the settlement should be approved. The DEP does not take issue with any aspect of the settlement or the court's decision to approve it, except one: the DEP argues that the court may not approve distribution of the settlement pro-

---

**6.** Assumption and assignment of unexpired leases are authorized under Code § 365(b) and (f).

ceeds without providing for compliance with ECRA. The DEP further argues that even though it did not object to the sale after notice that the amended sale agreement did not provide for compliance with ECRA, and even though the order approving the sale has become final, the DEP can void the sale unless the debtor complies with ECRA.

### III.

### THE DEP AND THE STATE ARE BOUND BY THIS COURT'S ORDER APPROVING THE SALE

The Debtor, the Creditors' Committee and the Bank argue that by failing to object to the sale in a timely manner, the DEP waived any objection which it may have had to the sale. The DEP responds that no acts or omissions of the DEP or the State can constitute a waiver of the obligation to comply with ECRA.

28 U.S.C. § 1334(d) gives the district court exclusive jurisdiction over all property of the debtor and the estate. 28 U.S.C. § 1334(b) gives the district court original but not exclusive jurisdiction over all civil proceedings arising under, arising in or related to bankruptcy cases. 28 U.S.C. § 151 gives the bankruptcy court, as a unit of the district court, authority to exercise jurisdiction over bankruptcy cases referred by the district court. 28 U.S.C. § 157(b)(2)(N) provides that sales of property of the estate are core proceedings in which the bankruptcy court can enter final orders. The court entered such an order in this case. Since no appeal was filed, the order became final. As previously noted in Section I, the amended sale agreement which was approved did not call for compliance with ECRA as a condition of the sale, and the order approving the sale provides that the purchaser takes title to the assets free and clear of any obligation to comply with any environmental laws.

■ The State, through the DEP, as its representative, is a party to this proceeding. Because the sale of assets was other than in the ordinary course of business, Code section 363(b)(1) required that notice

of the sale and opportunity for a hearing on any objections must be provided. Such notice was provided to the DEP under Bankruptcy Rule 2002(a)(2), and the DEP did not object to the sale. Code section 102(1)(B) authorizes any act requiring notice and a hearing to take place without a hearing unless timely requested by a party in interest. The determination of the court that the sale could take place without complying with ECRA is binding upon the DEP and the State under Code section 106(c)(2). *See Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) ("[t]he language of section 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery.").

The nature of the obligations imposed by ECRA do not change this result. The bankruptcy system would be severely damaged if parties could not rely on the finality of court orders entered after notice and opportunity for hearing. This is particularly true in relation to orders authorizing sale of property of the estate. *See* 11 U.S.C. § 363(m).

The DEP appears in this court regularly, on behalf of the State, as it has a right to do. As it does here, the DEP often requests entry of orders directing other parties to take, or refrain from taking action. The DEP will not be permitted to argue that other parties are bound by this court's orders, but that it is not. Code section 106(c)(2) precludes such arguments.

■ Moreover, because this court's order approving the sale has become final, any possible objection that the sale required compliance with ECRA is now also barred by the doctrine of *res judicata:*

Res judicata prevents litigation of *all* grounds for, or defenses to, recovery *that were previously available to the parties, regardless of whether they were asserted* in the prior proceeding. [emphasis added]

*Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Therefore, the DEP cannot now argue that the sale could not be approved without

compliance with ECRA. That argument was waived when it was not timely raised.

■ Lastly, ECRA cannot be applied in a manner which violates the Bankruptcy Code. The bankruptcy courts are empowered to approve sales of estate property free and clear of liens and other interests, and Congress clearly intended such sales to be final and unassailable. *See* 11 U.S.C. §§ 363(b), (f) and (m). Once such a sale has been approved by the bankruptcy court on notice to the state, an application of ECRA which would enable the state to void the sale would violate the Supremacy Clause of the United States Constitution. *See Perez v. Campell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) and *Torwico Electronics, Inc. v. New Jersey Dept. of Envtl. Protection,* 131 B.R. 561 (Bkrtcy. D.N.J.1991).

## IV.

## ECRA ONLY APPLIES TO TRANSFERS OF INDUSTRIAL PLANTS AND REAL PROPERTY

■ In the alternative, the DEP's objection to the sale and distribution of the proceeds is without merit for other reasons. First of all, all of the property which was sold here was personal property. N.J.S.A. 13:1K–11(a) provides that the transferring of an industrial establishment is contingent on the implementation of ECRA. N.J.S.A. 13:1K–8(f) defines "industrial establishment" as "any place of business engaged in operations which involve the generation, manufacture, refining, transportation, treatment, storage, handling or disposal of hazardous substances or wastes on-site, above or below ground...." N.J.S.A. 13:1K–13(a) provides that failure to comply with ECRA "is grounds for voiding the sale or transfer of an industrial establishment or any real property utilized in connection therewith by the transferee...." In *Matter of Synfax Mfg., Inc.,* 126 B.R. 30 (Bkrtcy.D.N.J.1990), the court interpreted the term "industrial establishment" to mean real property and plant:

> The fact that "industrial establishment" is defined as a place of business qualified by other definitional statutes suggests that the Act contemplates improved real estate; indeed, the only logical reading of the statute is that the industrial establishment to which the act refers is improved real estate which includes a "plant" as that term is used in reference to an industrial site. While such a plant may include building, docks, loading base, and fixtures attached to the building on the improved real estate, this court is unable to view the statute as contemplating anything further, specifically personal property.

*Id.* at 34.

Review of N.J.A.C. 7:26B–1.3 confirms that the court's analysis of the term is correct:

> "Industrial establishment" means *any place of business or real property at which such business is conducted,* having the primary SIC major group number within 22–39 inclusive, 46–49 inclusive, 51 or 76 as designated in, and determined in accordance with, the procedures described in the SIC manual and engaged in operations on or after December 31, 1983, which involve the generation, manufacture, refining, transportation, treatment, storage, handling, or disposal of hazardous substances and wastes on-site, above or below ground unless otherwise provided at N.J.A.C. 7:26B–1.8. *Except as provided below for leased properties, the industrial establishment includes all of the block(s) and lot(s) upon which the business is conducted and those contiguous block(s) and lot(s) controlled by the same owner or operator that are vacant land, or that are used in conjunction with such business. For leased properties, the industrial establishment includes the leasehold and any external tanks, surface impoundments, septic systems, or any other structures, vessels, contrivances, or units that provide, or are utilized for, hazardous substances and wastes to or from the leasehold.*

N.J.A.C. 7:26B–1.3 (emphasis added).

■ The sale in question was of inventory, accounts receivable, contract rights and

other personal property. The sale of those assets did not constitute a "transfer of an industrial establishment" which could be voided under ECRA. N.J.S.A. 13:1K–13(a) (West Supp.1991).

## V.

### IT WOULD VIOLATE THE FIFTH AMENDMENT TO USE PART OF THE BANK'S COLLATERAL TO PAY FOR ANY CLEANUP

▆▆▆▆ Moreover, it has been held that cleanup costs under ECRA do not take priority over claims secured by liens on personal property. *Synfax Mfg. Inc., supra,* 126 B.R. at 35; *In re Corona Plastics, Inc.* 99 B.R. 231, 238 (Bkrtcy.D.N.J.1989). This court hereby follows those cases to the extent of such holdings. They are ultimately based upon the fact that a security interest is property which is protected by the Takings Clause of the Fifth Amendment to the United States Constitution, which provides that no private property shall be taken for public use without just compensation. *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). A secured creditor has a constitutional right to preserve the value of its secured claim on the petition date. *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940); 2 Collier on Bankruptcy ¶ 362.01, at 362–17 (15th Ed.1982). Recognizing this right, Code section 361 requires that the estate compensate a secured creditor for any decrease in the value of its collateral resulting from the bankruptcy case. There is no satisfactory basis for arguing that although Code sections 361, 362(d)(1), 363(e), 364(d) and 507(b) provide that a secured creditor must be compensated if the bankruptcy case causes a reduction in the value of collateral, the creditor does not

have to be compensated if the state takes the creditor's money to pay for an environmental cleanup. The real property in question is neither owned by the Bank nor its collateral, and the state simply cannot take the Bank's money to pay for a cleanup merely because the Bank has the misfortune to be in the same case. The only expenses which can be charged against a creditor's collateral are those for preserving or disposing of the collateral. 11 U.S.C. § 506(c). ECRA cleanup costs are not expenses for preserving or disposing of personal property, and hence they are not chargeable to creditors holding liens on such assets under Code section 506(c). *In re Corona Plastics, Inc., supra,* and *Matter of Synfax Mfg., Inc., supra.*

▆▆▆▆ It is clear from these authorities that it would violate the Takings Clause of the Fifth Amendment to hold that ECRA cleanup costs take priority over security interests in personal property.[7]

## VI.

### AN OBLIGATION TO CLEAN UP PRE-PETITION ENVIRONMENTAL CONTAMINATION IS PRESUMPTIVELY AN UNSECURED CLAIM UNDER THE BANKRUPTCY CODE

In *Torwico, Inc. v. State of New Jersey, Department of Environmental Protection, supra,* decided on the same date as this opinion, this court holds as follows:

▆▆▆▆ 1. An obligation of the debtor to clean up environmental contamination is a "claim" as defined in Code section 101(4). *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). If the contamination occurred before the petition is filed, the cleanup obligation is presumptively a general unsecured claim. *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137 (3d Cir.1985). If such an obligation is the subject of a state regulatory statute, but

---

**7.** By contrast, it has been held that a grant of a first priority lien on real property to secure clean up expenditures by the State under the Spill Act, N.J.S.A. 58:10–23.11f(f), does not violate the Takings Clause, because the cleanup enhanced the value of the property to the extent of the amount expended. *Kessler v. Tarrats,* 194 N.J.Super. 136, 476 A.2d 326 (App.Div.1984). The relationship between that holding and the issue of whether liens on real property can be primed under ECRA is beyond the scope of this case.

can only be satisfied by the payment or spending of money, the obligation is a "money judgment" within the meaning of Code section 362(b)(5), and the expenditure of funds to satisfy such obligation is therefore subject to the automatic stay of Code section 362(a).

■ 2. N.J.S.A. 13:1K–12, which provides that a cleanup obligation which is the subject of ECRA cannot be affected by any bankruptcy proceeding, and such part of N.J.S.A. 13:1K–8(b) as provides that ECRA is triggered by the filing of a bankruptcy petition, are void because they violate the Supremacy Clause of the United States Constitution.

The DEP makes essentially the same arguments in this case that it made in *Torwico*. This court therefore incorporates Sections III, IV and VI of the opinion in *Torwico* herein, and repeats those holdings herein.

### VII.

28 U.S.C. § 959(b) IS NOT APPLICABLE WHERE A TRUSTEE OR DEBTOR IN POSSESSION IS NOT OPERATING AND IS LIQUIDATING PROPERTY OF THE ESTATE

28 U.S.C. § 959(b) provides:

Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

■ The DEP argues that 28 U.S.C. § 959(b) requires this and all debtors in possession and trustees to comply with ECRA and all environmental laws. Neither a majority of the members of the

Supreme Court nor the Court of Appeals for the Third Circuit has ruled on this question. The dissent, however, in *Midlantic Nat'l. Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 507, 106 S.Ct. 755, 762–63, 88 L.Ed.2d 859 (1986) argued that 28 U.S.C. § 959(b) does not apply in liquidation cases. *Id.* at 514, 106 S.Ct. at 766 (Rehnquist, J., dissenting). Further, it has been held in two cases by the bankruptcy court in this state that 28 U.S.C. § 959(b) does not apply where a trustee or debtor in possession is not operating the debtor's business and is liquidating property of the estate. *In re Corona Plastics, Inc.*, 99 B.R. 231, 235–36 (Bkrtcy. D.N.J.1989); *Matter of Borne Chemical Co.*, 54 B.R. 126, 135 (Bkrtcy.D.N.J.1984). This court hereby follows those cases to the extent of such holdings.[8]

■ This opinion stops short of holding that 28 U.S.C. § 959(b) will never apply in a liquidation case. There may be exceptions to the general rule. However, nothing in this case suggests that it calls for such an exception. The court therefore holds that 28 U.S.C. § 959(b) is not applicable here.

### VIII.

THE NARROW EXCEPTION TO THE ABANDONMENT POWER ENUNCIATED IN THE MIDLANTIC CASE IS NOT APPLICABLE IN THIS CASE

■ As it does in every case in which there is or may be environmental contamination, the DEP argues in this case that *Midlantic, supra,* requires that any environmental contamination be cleaned up before estate funds are used for any other purpose. *Midlantic,* however, is not applicable here for a number of reasons.

First of all, *Midlantic* deals with abandonment under Code section 554 of contaminated real property. This motion deals with turnover of collateral to a secured creditor, not abandonment. Hence *Midlan-*

---

8. In *Torwico, supra,* at n. 17, this court declined to follow *Borne Chemical* to the extent that it can be construed as holding that the sections of ECRA which purport to dictate the effects of

bankruptcy on cleanup obligations are constitutional. This court, however, agrees with *Borne Chemical's* conclusion regarding 28 U.S.C. § 959(b).

*tic* is not applicable. *See Corona Plastics, supra,* 99 B.R. at 234–35.

Secondly, the *Midlantic* case created a narrow exception to the abandonment power involving cases in which abandonment would aggravate imminent and identifiable dangers to the public health or safety. *Midlantic, supra,* 474 U.S. at 499, n. 3 and 507, n. 9, 106 S.Ct. at 758, n. 3 and 762, n. 9. The Supreme Court held that before the bankruptcy court can authorize abandonment in such cases, it must formulate conditions that will adequately protect the public's health and safety. *Id.* at 507, 106 S.Ct. at 762–63. The majority opinion in *Midlantic* gives very little guidance as to the standards which the bankruptcy court should use in formulating such conditions. The dissent argues that in almost all cases, giving adequate notice of the proposed abandonment to the relevant authorities should suffice. *Id.* at 515, 106 S.Ct. at 766–67. However, this much is clear: *Midlantic* created a narrow exception to the abandonment power for those rare cases in which unconditional abandonment would aggravate serious existing dangers. The DEP's construction of *Midlantic* as requiring that estate funds be devoted first to environmental contamination in every case is plainly incorrect.[9]

It should be noted that *Midlantic* did not overrule *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). In *Kovacs,* the Supreme Court held that to the extent an order to clean up prepetition contamination requires the payment of money, such order is a money judgment, which generally are unsecured claims. The DEP has repeatedly argued that *Midlantic* is to be read very broadly, and *Kovacs* is to be read very narrowly. However, the DEP has distorted the relationship between these cases. It is *Midlantic* which, by its own terms, is to be applied narrowly.[10]

The DEP's objection to the settlement in this case is overruled, and the settlement is approved. The attorney for the debtor is to submit an order under the five-day rule.

---

**9.** There is an interesting epilogue to *Midlantic.* It is ironic that by order of January 28, 1987, with the consent of the Attorneys General of New Jersey and New York, the bankruptcy court authorized the trustee to abandon the subject properties because there were no remaining funds available to undertake any remedial action. The state, however, apparently won't be picking up the tab, at least not in New Jersey.

The case of *Allied Corp. v. Frola,* 730 F.Supp. 626 (D.N.J.1990), is apparently litigation among a number of other entities as to how the cost of cleaning up the New Jersey facility will be divided up.

**10.** *Id.* 474 U.S. at 507, n. 9, 106 S.Ct. at 762, n. 9.