In re CONTINENTAL AIRLINES,
INC., et al., Debtors.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL and Donald
Henderson, Appellants,

v.

CONTINENTAL AIRLINES,
INC., et al., Appellees.

Civ. A. No. 92–326–JLL.

United States District Court,
D. Delaware.

Sept. 14, 1992.

Stephen W. Spence of Phillips, Goldman & Spence, P.A., Wilmington, Del., and Babette A. Ceccotti and Peter D. DeChiara of Cohen, Weiss and Simon, New York City, of counsel, for appellants.

James L. Patton, Jr., Laura Davis Jones and Robert S. Brady of Young, Conaway, Stargatt & Taylor, Wilmington, Del., and John J. Gallagher and Margaret H. Spurlin of Paul, Hastings, Janofsky & Walker, Washington, D.C., of counsel, for appellees.

## OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Appellants Donald Henderson and Air Line Pilots Association International ("Collectively referred to as ALPA") seek review of the final order entered by the United States Bankruptcy Court for the District of Delaware entered on May 12, 1992, granting the motion of Appellee Continental Airlines, Inc., ("Continental") for judgment on the pleadings. (Docket Item ["D.I."] 25.) This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 158(a).

### II. FACTS

This appeal represents the most recent clash between protagonists Continental and ALPA[1]. On September 24, 1983, Continental Airlines filed a petition for voluntary reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. *See Air Line Pilots Association, International v. O'Neill,* —— U.S. ——, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). Thereafter, the Bankruptcy Court approved Continental's repudiation of its collective-bargaining agreement with ALPA and Continental's institution of "emergency work rules" which reduced the salary and benefit packages of pilots by nearly 50%. *Id.* In retaliation, ALPA called for a strike of all Continental pilots. The strike, which lasted more than two years, "was acrimonious, punctuated by incidents of violence, and the filing of a variety of law suits, charges, and countercharges." *Id.*

In October 1985, while Continental was still engaged in reorganization in the Bankruptcy Court for the Southern District of Texas, ALPA and Continental entered into a settlement agreement, thus ending the strike. Bankruptcy Judge T. Glover Roberts was named interest arbitrator by both Continental and ALPA and was empowered to resolve any and all disputes between them. *See In Re Continental Airlines Corporation,* 907 F.2d 1500, 1503 (5th Cir. 1990). With the consent of both parties, Judge Roberts issued an "Amended Order and Award" which embodied the terms of the settlement agreement. *Id.*

The "Amended Order and Award" contains two provisions which are the focus of this appeal. The first is a nondiscrimination clause which provides that "[n]o pilot shall be subject to discrimination, fines or harassment, either by ALPA or by the Company [e.g. Continental], due to legally protected strike activities, work during the strike or service as a replacement pilot during the strike period." (D.I. 5 at Exhibit ["Ex."] 14.) The second provision of the "Amended Order and Award" at issue states that "[a]ny dispute which may arise concerning the interpretation, or application of the terms of this Order and Award ... may be submitted by the effected pilot in writing to the Company. If the dispute is not satisfactorily resolved within five (5) days, the affected pilot may submit the dispute forthwith to the Bankruptcy Court as an adversary proceeding." (D.I. 5 at Ex. 14.)

After emerging from the proceedings in the Bankruptcy Court for the Southern District of Texas, Continental again encountered serious financial difficulties and again sought to reorganize under Chapter 11. Thus, Continental · filed a voluntary petition for reorganization in the United States Bankruptcy Court for the District of Delaware on December 3, 1990. As part of its second reorganization effort, Continental moved the Bankruptcy Court for the District of Delaware to approve a Memorandum of Understanding ("MOU") between Continental and its pilots. (D.I. 5 at Ex. 1.) In essence, the MOU provided for substantial reductions in the pilots' salaries and benefits. As consideration for these concessions, Continental promised in the MOU to increase pilot salaries in the fu-

---

**1.** ALPA is an unincorporated labor organization which represents air line pilots in collective bargaining. Formerly, ALPA was the authorized collective bargaining representative for Continental pilots. Continental withdrew its recognition ALPA in August of 1985. *See Air Line Pilots Association v. O'Neill,* —— U.S. ——, ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991).

ture, to establish funds for pilots to seek legal and professional advice, to provide free coach passes to certain pilots, and to help pilots make lateral moves in the event that a substantial part of the company was liquidated. (D.I. 5 at Ex. 10.) Furthermore, the MOU provided that Continental would grant a pension credit under the Continental Retirement Plan to pilots and all other employees who were in active service between January 1 1984 and September 1, 1988. (D.I. 5 at Ex. 10.)

On May 3, 1991, ALPA filed an adversary proceeding in the Bankruptcy Court for the Southern District of Texas objecting to the MOU on the grounds that the active service pension credit provision contained therein contravened the anti-discrimination provision in Bankruptcy Judge Roberts "Amended Order and Award." (D.I. 5 at Ex. 3.) ALPA contended that the pension credit provision, although facially neutral, was discriminatory in purpose and effect against Continental pilots who participated in the ALPA strike. ALPA argued that the pension credit provision denied pilots who participated in the ALPA ordered strike the same pension benefits as pilots who continued in active service with Continental during the strike. *Id.* Since the striking pilots were not in active service during the period of the strike from October 1983 through October 31, 1985, and did not become reinstated in active service until January 1, 1986, striking pilots are not eligible to receive the full amount of the pension credit. By contrast, pilots who remained in active service with Continental throughout the strike receive the full amount of the pension credit. *Id.*

On May 6, 1991, while the adversary proceeding in the Bankruptcy Court for the Southern District of Texas was still pending, ALPA filed an objection to Continental's motion to approve the MOU in the Bankruptcy Court for the District of Delaware. (D.I. 5 at Ex. 2.) This objection was premised on the same grounds asserted by ALPA in its adversary proceeding in the Bankruptcy Court for the Southern District of Texas. *Id.* In addition, ALPA argued that the Bankruptcy Court for the District of Delaware should condition any approval

of the MOU upon the resolution of the adversary proceeding in the Bankruptcy Court for the Southern District of Texas challenging the active service pension credit provision. *Id.* In support of its position, ALPA argued that the terms of the "Amended Order and Award" issued by Judge Roberts expressly provided that any disputes as to the interpretation of the settlement were to be resolved in the Bankruptcy Court for the Southern District of Texas. *Id.*

On July 11, 1991, Continental filed an adversary proceeding in the Bankruptcy Court for the District of Delaware seeking a declaratory judgment that: (i) ALPA's adversary proceeding violated the automatic stay provision contained in § 362(a)(3) of the Bankruptcy Code; and (ii) that as a matter of law, the MOU did not discriminate against former strikers. (D.I. 5 at Ex. 3.) Before the Bankruptcy Court for the District of Delaware could rule upon Continental's motion, Continental and the various constituencies in the Delaware bankruptcy proceeding agreed to an Amended Memorandum of Understanding ("AMOU") which postpones the effective date of the active service pension credit provision until after the reorganization plan is confirmed by the Bankruptcy Court. (D.I. 5 at Ex. 10.) In addition, the AMOU provides that in the event the reorganization plan is not confirmed by the Bankruptcy Court, the pilots will have an allowed administrative expense claim in any subsequent bankruptcy proceedings equal in amount to the lost wages forgone under the AMOU. (D.I. 6 at Ex. 18.)

On February 5, 1992, Continental moved the Bankruptcy Court for the District of Delaware for approval of the AMOU under § 363(b)(1) of the Bankruptcy Code. (D.I. 5 at Ex. 10.) On March 13, 1992, ALPA filed an objection to the AMOU in the Bankruptcy Court for the District of Delaware, restating its earlier objections that the active service pension credit provision of the AMOU violated the anti-discrimination provision of Judge Robert's "Amended Order and Award" and that any approval of the AMOU should be conditioned upon the res-

olution of this issue by the Bankruptcy Court for the Southern District of Texas. (D.I. 5 at Ex. 10.)

After conducting an evidentiary hearing on these two motions, the Bankruptcy Court for the District of Delaware issued an oral ruling from the bench approving the entire AMOU and overruling ALPA's specific objections thereto. (D.I. 6 at Ex. 19.) The Bankruptcy Court for the District of Delaware rejected ALPA's contention that any approval of the AMOU would be contingent upon the determination of the discrimination issue by the Bankruptcy Court for the Southern District of Texas and held that "active service credit provision did not discriminate against strikers as a matter of law." *Id.* Immediately following this oral ruling by the Bankruptcy Court for the District of Delaware, Continental made an oral motion for judgment on the pleadings in the adversary proceeding filed by Continental on June 11, 1992. Continental argued that judgment on the pleadings was appropriate under the circumstances because the Bankruptcy Court for the District of Delaware in its oral ruling approving the AMOU had ruled that the AMOU did not discriminate against pilots who had participated in the Continental strike as a matter of law and thus any further consideration of this claim was precluded under the doctrine of res judicata. *Id.* Without further proceedings, the Bankruptcy Court for the District of Delaware granted Continental's motion for judgment on the pleadings. *Id.* On April 30, 1992, the Bankruptcy Court for the District of Delaware issued a written order (the "April 30th order") confirming its oral ruling approving the AMOU and overruling the ALPA's objections. (D.I. 6 at Ex. 20.) ALPA did not appeal this order of the Bankruptcy Court for the District of Delaware issued on April 30th. Accordingly, this order stands as a final order and as the law of the case. On May 12, 1992, the Bankruptcy Court for the District of Delaware issued a second written order confirming its oral ruling granting Continental's motion for judgment on the pleadings (the "May 12th order"). (D.I. 6 at Ex. 21.) ALPA appeals the latter May 12th order to

this Court pursuant to 28 U.S.C. § 158(a) but does not appeal the April 30th Order. It is the propriety of the May 12th order alone that is contested on appeal by ALPA.

## III. DISCUSSION

### A. *Standard of Review*

■ The standard of review to be applied by a District Court in reviewing rulings of a Bankruptcy Court depends upon the nature of the issues on appeal. Factual determinations of the Bankruptcy Court are subject to deference and are not reversed unless found to be clearly erroneous. Bankruptcy Rule 8013. *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983); *In re Collated Products Corp.*, 121 B.R. 195, 201 (D.Del.1990) *aff'd*, 937 F.2d 596 (3d Cir.1991). Legal determinations of the Bankruptcy Court are subject to plenary review and are considered *de novo* by the reviewing court. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988); *In re Collated Products Corp.*, 121 B.R. at 201. Because this appeal involves review of the Bankruptcy Court's grant of judgment on the pleadings, which is a purely legal determination, this Court will apply the *de novo* standard of review.

Appellant ALPA advances several lines of argument in support of its contention that the Bankruptcy Court for the District of Delaware erred in granting judgment on the pleadings for Appellee Continental. Foremost, ALPA asserts that the Bankruptcy Court for the District of Delaware erred in ruling that the adversary proceeding in the Bankruptcy Court for the Southern District of Texas violated the automatic stay provision of § 362(a)(3) of the Bankruptcy Code. Second, ALPA argues that the Bankruptcy Court for the District of Delaware erred in resolving the discrimination issue because under the "Amended Order and Award" entered by the Bankruptcy Court for the Southern District of Texas all questions concerning the interpretation of the "Amended Order and Award" are the exclusive province of that Court. Finally, ALPA argues that the Bankruptcy Court for the District of Delaware erred in

ruling that the active service credit provision in the AMOU did not violate the nondiscrimination provision of the "Amended Order and Award." (D.I. 8.)

Before turning to the arguments of ALPA opposing the May 12th order of the Bankruptcy Court for the District of Delaware, this Court must address the threshold issue raised by Continental as to whether the April 30th order of the Bankruptcy Court for the District of Delaware, holding the actual service credit provision of the AMOU nondiscriminatory as a matter of law, precludes further consideration of the discrimination issue under the doctrine of res judicata. In support of its contention that res judicata bars reconsideration of the discrimination issue, Continental argues that the April 30th order of the Bankruptcy Court for the District of Delaware overruling ALPA's objection to the AMOU and approving the AMOU has become final as to ALPA. Continental asserts that the April 30th order, the adversary proceeding initiated by ALPA in the Bankruptcy Court for the Southern District of Texas, and this appeal, all involve the identical issue squarely raised by ALPA—whether the active service credit provision of the AMOU discriminates against Continental pilots who participated in the ALPA ordered strike in violation of the "Amended Order and Award" issued by the Bankruptcy Court for the Southern District of Texas. Since, ALPA did not appeal the April 30th order of the Bankruptcy Court for the District of Delaware in which that Court held, *inter alia*, that the actual service credit provision of the AMOU was nondiscriminatory as a matter of law, Continental argues that res judicata bars relitigation of this issue on appeal. (D.I. 11.) This Court agrees with Continental and for the reasons stated more fully below the Court will dismiss the appeal of the May 12th order of the Bankruptcy Court for the District of Delaware as barred by res judicata.

### B. *Res Judicata*

The doctrine of res judicata is "[a] fundamental precept of common-law adjudication" and its application "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153–54, 99 S.Ct. at 973–74.

Succinctly stated, the doctrine of res judicata provides "that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." BLACK'S LAW DICTIONARY 1305 (6th ed. 1990). Thus, for res judicata to bar relitigation three elements must be present: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *E.E.O.C. v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir.1990). The sum and substance of the rule of res judicata is that where a judgment determines an issue that judgment "is 'final until reversed in an appellate court, or modified or set aside in the court of its rendition.'" *Stoll v. Gottlieb*, 305 U.S. 165, 170, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) *quoting Deposit Bank v. Frankfort*, 191 U.S. 499, 520, 24 S.Ct. 154, 161, 48 L.Ed. 276 (1903). The doctrine of res judicata applies with equal force to final judgments rendered by the bankruptcy courts and thus precludes relitigation in another bankruptcy proceeding and in other proceedings before Federal and State Courts. *Stoll v. Gottlieb*, 305 U.S. at 170–72, 59 S.Ct. at 137–38; *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 319–20, 84 L.Ed. 329 (1940); *accord* 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice* ¶ 0.419 (2d ed. 1992).

■ Applying the tripartite test of res judicata to the present appeal, the Court finds that the doctrine operates to bar relitigation of ALPA's discrimination claim against the AMOU active service pension credit provision. ALPA does not dispute that the April 30th order of the Bankruptcy Court for the District of Delaware is a final judgment. The April 30th order satisfies the four factor test for finality enunciated by this court in *In re Collated Products Corp.*, 121 B.R. at 200. Accordingly, the Court finds that first prong of the res judicata test, that of a final judgment, is satisfied and the Court will not belabor its analysis of the first prong.

The second prong of the res judicata test, that of identity of claims, is also satisfied in the present case. Continental correctly asserts in its brief to this Court that the April 30th order of the Bankruptcy Court for the District of Delaware, the present appeal from the May 12th order of the Bankruptcy Court for the District of Delaware, and the pending adversary proceeding initiated by ALPA in the Bankruptcy Court for the Southern District of Texas, all concern the same issue: whether the active service pension credit provision of the AMOU discriminates against Continental pilots who participated in the ALPA ordered strike in violation of the "Amended Order and Award." (D.I. 11.)

In its reply brief ALPA asserts that the discrimination claim was not "actually litigated" in the Bankruptcy Court for the District of Delaware in the proceedings that gave rise to the April 30th order and therefore, res judicata does not operate to bar reconsideration of the discrimination claim. (D.I. 12.) A cursory examination of the transcript of the proceedings below reveals that the discrimination claim was fully briefed and litigated by ALPA in the Delaware bankruptcy proceedings that gave rise to the April 30th order. (D.I. 6 at Ex. 19.) In the proceedings below, counsel for ALPA argued that the actual service pension credit pension of the AMOU had a discriminatory impact on strikers and was designed expressly for that purpose. *Id.* The Bankruptcy Court for the District of Delaware rejected the arguments of ALPA and held that the actual service credit provision was nondiscriminatory as a matter of law. *Id.* Accordingly, the second prong of the res judicata test, identity of claims, is met.

■ ALPA also asserts in its reply brief that application of the doctrine of res judicata is foreclosed because of the disparate burdens of proof in the two proceedings. ALPA argues that the Delaware Bankruptcy Court's April 30th order, ruling that the actual service credit provision of the AMOU is nondiscriminatory as a matter of law, does not have preclusive effect on the present appeal from the May 12th order because Continental bore a lesser burden of proof with respect to the claims in the April 30th order than Continental bore with respect to the claims in the May 12th order. ALPA maintains that Continental had to sustain a relatively slight burden of proof in the April 30th order approving the AMOU because Continental was required to prove only that the AMOU was "in the best interest of the estate" and "supported by a sound business reason." (D.I. 12.) ALPA contends that in the May 12th order for judgment on the pleadings, Continental had to sustain a more difficult burden of proof, to wit, that drawing all inferences in favor of ALPA, the nonmoving party, no material issue of fact exists and that as a matter of law Continental is entitled to judgment. Accordingly, ALPA argues that these disparate burdens of proof militate against the imposition of res judicata. *Id.*

ALPA's contention is erroneous. In support of its position, ALPA relies on the Restatement (Second) of Judgments § 28(4) (1982) which provides a list of exceptions to the general rule of *issue* preclusion. In pertinent part, the Restatement reads:

§ 28 Exceptions to the General Rule of Issue Preclusion

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ... (4)

The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action....

*Restatement (Second) of Judgments* § 28(4) (1982). As the text makes clear, this exception applies only to the general rule of issue preclusion or collateral estoppel. The present appeal involves res judicata, or as it is sometimes referred, claim preclusion, and thus the principle enunciated in § 28(4) does not apply. *O'Shea v. Amoco Oil Company,* 886 F.2d 584, 594–95 (3d Cir.1989). Indeed, the United States Court of Appeals for the Third Circuit has explained this distinction:

> This principle [of Restatement § 28(4)] does not translate to the realm of claim preclusion ... Claim preclusion does not merely bar the relitigation of the claims brought in the first suit; it also bars the plaintiff from litigating claims that have never been litigated if those claims should have been brought as part of the first suit but were not. [Citation Omitted] The purpose of claim preclusion, unlike issue preclusion, is to prevent the waste of resources and the harassment to the defendant that stem from the piecemeal litigation of claims ... And applying claim preclusion when there are varying burdens of proof does not raise any problem analogous to the problem of applying issue preclusion identified in ... the Restatement.

*Id.* at 594.

■ However, even assuming *arguendo* that the Court were to accept ALPA's contention that Restatement § 28(4) applies to the present appeal, ALPA's argument still fails. ALPA's reasoning is fallacious because it confuses the appropriate legal standards for approval of a settlement and an award of judgment on the pleadings with the burden of proof. ALPA correctly states the standards for approval of a settlement, *see In re Heldor Industries, Inc.,*

131 B.R. 578, 583 (Bankr.D.N.J.1991), and for an award of judgment on the pleadings. *See* D.I. 25. Although these legal standards are distinct, both are subject to the same burden of proof, the preponderance of the evidence standard. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) ("Because the preponderance-of-the evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants...."). Indeed, ALPA cites only two cases in which the principle of Restatement § 28(4) was relied upon to foreclose *issue* preclusion *Artukovic v. Immigration and Naturalization Service,* 693 F.2d 894 (9th Cir.1982) and *Wilcox v. First Interstate Bank of Oregon, N.A.,* 815 F.2d 522 (9th Cir.1987). In both cases, the burden of proof in the two suits at issue differed; in one of the suits the burden of proof was by clear and convincing evidence and in the other suit the burden of proof was by a preponderance of the evidence. In *Artukovic,* the Court held that issue preclusion was inappropriate because in the first proceeding appellant had the burden of proof while in the second proceeding, because of an intervening amendment to the Immigration Act, the government had the burden of proving its case by "clear, convincing and unequivocal evidence." *Artukovic,* 693 F.2d at 898–99. Moreover, in *Artukovic* the Court noted that the case arose "in the administrative law context, [where] the principles of collateral estoppel and res judicata are applied flexibly." *Id.* at 898. Similarly, in *Wilcox,* the Court held the application of issue preclusion inappropriate because in the first proceeding, in which the appellee was granted summary judgment, the appellants had to sustain the burden of proof by clear and convincing evidence with respect to their common law fraud claims, while in appellants' subsequent proceeding, appellants had to sustain the burden of proof by a preponderance of the evidence with respect to their Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. *Wilcox,* 815 F.2d at 530–32. Therefore, both cases relied upon by ALPA are inapposite. Accordingly, res judicata

applies to preclude relitigation of the discrimination issue in this appeal.

The third and final prong of the res judicata test, identity of parties, is not contested by ALPA and is clearly satisfied. ALPA and Continental were both parties to the proceedings that gave rise to both the April 30th and May 12th Bankruptcy Court Orders.

Therefore, the Court holds that the April 30th order is a final judgment on the discrimination claim and bars relitigation of that claim in ALPA's present appeal. The arguments by ALPA opposing the May 12th order need not be considered by the Court because any reconsideration of the discrimination claim is barred by res judicata. The Bankruptcy Court for the District of Delaware advised counsel for ALPA to pursue a double-track appeal of both the approval of the AMOU and the judgment on the pleadings for Continental. (D.I. 6 at Ex. 19.) ALPA chose not to do so.

An order will be entered dismissing ALPA's appeal of the Delaware Bankruptcy Court's May 12th order on the grounds that it is barred by the doctrine of res judicata by the April 30th order.